COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS


| | |
|---|---|
| IN THE INTEREST OF<br><br>V.L.R., A CHILD. | §          No. 08-15-00250-CV<br><br>§          Appeal from<br><br>§          65th District Court<br><br>§          of El Paso County, Texas<br><br>§          (TC # 2014DCM5350) |

## **O P I N I O N**

S.H.R. is appealing a judgment terminating her parental rights. Finding that the evidence is legally insufficient to establish the finding required by Section 1912(f) of the Indian Child Welfare Act,[1] we reverse the termination order and render judgment denying the petition for termination of S.H.R.'s parental rights.

### **FACTUAL SUMMARY**

On July 29, 2014, the Texas Department of Family and Protective Services (TDFPS) filed a petition seeking to take possession and be appointed the temporary managing conservator of a fourteen-year-old child, V.L.R., because she had been the victim of neglect or sexual abuse. The petition also sought to terminate the parental rights of the child's mother, the presumed

---

[1] *See* 25 U.S.C.A. § 1901-1963.

father, and the alleged father.[2]  On July 29, 2014, the trial court entered emergency temporary orders appointing TDFPS as the temporary managing conservator of V.L.R.

The original petition expressly alleged that V.L.R. is an Indian child.  At the time the original petition was filed, V.L.R. was living with J.M.R., her permanent legal guardian.  In the petition's supporting affidavit, investigator Jessica Rodriguez averred that J.M.R. informed her that V.L.R. is a member of the Oglala Sioux Tribe.  According to Rodriguez, the Oglala Sioux tribe had participated in prior child custody proceedings in Nebraska involving V.L.R.  S.H.R.'s parental rights were not terminated, but V.L.R. was eventually placed with J.M.R., the child's paternal aunt, when she was approximately two and a half years of age.  Less than one week before TDFPS filed the original petition, Rodriguez contacted the Oglala Sioux tribe about V.L.R. and spoke to William Cross who confirmed that V.L.R. is a tribal member.  Mr. Cross informed Rodriguez that "the tribe would not be stepping in" and he authorized TDFPS to proceed with the necessary actions.  The clerk's record includes copies of the notices sent by TDFPS to the Oglala Sioux Tribe and to the Bureau of Indian Affairs-Southern Plains Region informing them that a custody suit involving an Indian child, V.L.R., had been filed.  The notices sent to the Oglala Sioux tribe are addressed to the attention of William Cross.  There is nothing in the record indicating that the Oglala Sioux tribe made any written response to these notices.[3]

Under the third amended petition, TDFPS sought to terminate S.H.R.'s parental rights under Section 161.001(b)(1)(D), (E), (N), and (O) of the Texas Family Code.  *See* TEX.FAM.CODE ANN. § 161.001(b)(1)(D), (E), (N), (O) (West Supp. 2015).  The parties tried the

---

[2]  This appeal pertains only to the termination of the mother's parental rights.

[3]  The supplemental clerk's record includes a copy of a combined motion and order filed by William Cross on November 7, 2013 in the Oglala Sioux Tribal Court of Pine Ridge, South Dakota, requesting:  (1) that J.M.R. be made permanent guardian of V.L.R. and her sister, and (2) that the Oglala Nation Tiospaye Resource and Advocacy Center be dismissed from the case.  The order granting the motion is signed by the Juvenile Judge of the Youth and Family Court of the Oglala Sioux Tribe.

case in a bench trial on July 1, 2015, and TDFPS announced that it was abandoning the allegations based on Section 161.001(1)(D) and (E). S.H.R. was served with the petition on October 8, 2014 while she was in jail in Denver, Colorado, but she did not appear at trial. The Oglala Sioux tribe removed V.L.R. from S.H.R.'s custody when she was two-and-one-half years of age and placed her with J.M.R. V.L.R. was fourteen years of age when TDFPS filed the original petition. S.H.R. did not visit with V.L.R. during the entire time she lived with J.M.R., and she did not have any contact with the child except through Facebook. Further, S.H.R. did not visit or maintain contact with V.L.R. during the eleven month period after TDFPS became temporary managing conservator.

Applying the "beyond a reasonable doubt" standard required by Section 1912(f) of the Indian Child Welfare Act, the trial court made the following findings in the order terminating S.H.R.'s parental rights:

> 2.4. The Court finds beyond a reasonable doubt that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful, and the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.
>
> .     .     .
>
> 6.1. The Court finds beyond a reasonable doubt that termination of the parent-child relationship between [S.H.R.] and the child the subject of this suit is in the child's best interest.
>
> 6.2. Further, the Court finds beyond a reasonable doubt that [S.H.R.] has:
>
>> 6.2.1. constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months and: (1) the Department or authorized agency has made reasonable efforts to return the child to the mother; (2) the mother has not regularly visited or maintained significant contact with the child; and (3) the mother

has demonstrated an inability to provide the child with a safe environment, pursuant to § 161.001(l)(N), Texas Family Code;

6.2.2. failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child, pursuant to § 161.001(1)(O), Texas Family Code.

## INDIAN CHILD WELFARE ACT

The Indian Child Welfare Act (ICWA or the Act) applies to an involuntary child custody proceeding pending in a state court when the court knows or has reason to know that an Indian child is involved in a child custody proceeding. 25 U.S.C.A. § 1912(f); *In re R.R. Jr.*, 294 S.W.3d 213, 217 (Tex.App.--Fort Worth 2009, no pet.); *Doty-Jabbar v. Dallas County Child Protective Services*, 19 S.W.3d 870, 874 (Tex.App.--Dallas 2000, pet. denied). Under ICWA, a "child custody proceeding" includes a termination of parental rights action. 25 U.S.C.A. § 1903(1)(ii).

Congress enacted ICWA in 1978 in response to a rising concern over the consequences to Indian tribes, Indian families, and the children of abusive child welfare practices that resulted in the separation of Indian children from their families and tribes. *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 32, 109 S.Ct. 1597, 1599-1600, 104 L.Ed.2d 29 (1989); *In re R.R., Jr.*, 294 S.W.3d at 217. Congress included the following three findings in the Act:

(3) that there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children and that the United States has a direct interest, as trustee, in protecting Indian children who are members of or are eligible for membership in an Indian tribe;

(4) that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and

private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions; and

(5) that the States, exercising their recognized jurisdiction over Indian child custody proceedings through administrative and judicial bodies, have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families.

25 U.S.C.A. § 1901(3)-(5). Thus, the Act articulates a federal policy that, where possible, an Indian child should remain in the Indian community. *Mississippi Band of Choctaw Indians*, 490 U.S. at 36, 109 S.Ct. at 1602; Bureau of Indian Affairs Guidelines for State Courts and Agencies in Indian Child Custody Proceedings, 80 Fed.Reg. 10147 (February 25, 2015). ICWA endeavors to accomplish this objective by establishing procedural and substantive standards for child custody proceedings in state court. *See Mississippi Band of Choctaw Indians*, 490 U.S. at 36, 109 S.Ct. at 1602. S.H.R. contends that these requirements were not met in her case.

## ICWA IS APPLICABLE

In her first issue, S.H.R. contends that the trial court erred by failing to find that V.L.R. is an Indian child. S.H.R. challenges in other issues the legal and factual sufficiency of the evidence supporting various findings in the termination order. Ordinarily, we would address the legal sufficiency issues first, but Issue One addresses whether the Indian Child Welfare Act is applicable. This, in turn, impacts the findings the trial court was required to make and the burden of proof. Therefore, we will review Issue One before addressing the sufficiency arguments.

### *Failure to Identify V.L.R. as an Indian Child*

In Issue One, S.H.R. argues that the court failed to identify V.L.R. as an Indian child based on her membership in the Oglala Sioux tribe or the "Nogales Tribe." An Indian child is defined by the ICWA as an unmarried person who is under the age of eighteen, and is either a

member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. 25 U.S.C.A. § 1903(4). Under the Act, an Indian tribe is defined to mean any Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary of the Interior because of their status as Indians. 25 U.S.C.A. § 1903(8). The Act defines "Indian child's tribe" to mean (a) the Indian tribe in which an Indian child is a member or eligible for membership, or (b) in the case of an Indian child who is a member of or eligible for membership in more than one tribe, the Indian tribe with which the Indian child has the more significant contacts. 25 U.S.C.A. § 1903(5).

While the trial court did not make an express finding in the order of termination, the record supports an implied finding that V.L.R. is an Indian child because she is a member of the Oglala Sioux tribe. The original petition and subsequent amended petitions alleged that V.L.R. is an Indian child. At the time the case was filed, TDFPS sent notice and a copy of the petition to the Oglala Sioux tribe in Pine Ridge, South Dakota, and it sent additional notices in 2015. The notices were sent by certified mail, return receipt requested, as required by ICWA. TDFPS filed a permanency plan and progress report to the trial court on January 16, 2015. That report reflected that the Oglala Sioux Tribe had confirmed V.L.R.'s status as an American Indian child. Further, the caseworker, Lizette Frias, testified at trial about her efforts to work with the Oglala Sioux tribe, stating: "On numerous cases I would call the tribe requesting their assistance letting them know about this and they had a child that was registered with the Oglala Tribe. They informed me that they did, but they explained to me that they no longer held jurisdiction on her." The record supports the trial court's implied finding that V.L.R. is an Indian child by virtue of her membership in the Oglala Sioux tribe. Consequently, the requirements of ICWA are

applicable to this case. *See In re W.D.H.*, 43 S.W.3d 30, 34 (Tex.App.--Houston [14th Dist.] 2001, pet. denied); *Doty-Jabbar*, 19 S.W.3d at 874.

S.H.R. asserts in her brief that the trial court erred by not finding that V.L.R. is a member of what she refers to as the "Nogales Tribe." It appears that S.H.R.'s argument is based on an error contained on page 24 of the original version of volume 2 of the reporter's record, where a witness reportedly stated that V.L.R. was a member of the "Nogales Tribe." The court reporter subsequently filed a corrected volume 2. In the corrected version of volume 2, the witness testified that V.L.R. was a member of the "Oglala Tribe." There is no other evidence in the record that V.L.R. is a member of the "Nogales Tribe." Further, the "Nogales Tribe" is not on the list of Native American tribes legally recognized by the Bureau of Indian Affairs. Consequently, it is not an Indian tribe under the statutory definition and it cannot be the "Indian child's tribe" under the ICWA. *See* 25 U.S.C.A. § 1903(8)(defining "Indian tribe" as "any Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary because of their status as Indians . . . ."); 25 U.S.C.A. § 1903(5)(defining "Indian child's tribe" as the Indian tribe in which an Indian child is a member or eligible for membership).

S.H.R. also points to evidence in the record indicating that she might be a member of another Indian tribe. The clerk's record contains a letter purportedly written by S.H.R. and filed on October 27, 2014. In that letter, S.H.R. maintained that R.G. is V.L.R.'s biological father and he is a member of an Indian tribe in Morton, Minnesota, but she did not identify the tribe. Section 1903(4)(b)'s definition of an Indian child includes a child under the age of eighteen who is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. Thus, V.L.R. might be eligible for membership in R.G.'s tribe if she is his biological child.

The trial court did not, however, make any determination regarding paternity with respect to R.G., but it found beyond a reasonable doubt that R.G. had not registered with the paternity registry, and after the exercise of due diligence by TDFPS, he could not be located. S.H.R. was not married to R.G. when V.L.R. was born. The Act defines "parent" as meaning any biological parent of an Indian child, but it does not include the unwed father where paternity has not been acknowledged or established. 25 U.S.C.A. § 1903(9). Under these circumstances, the unidentified tribe is not V.L.R.'s tribe under Section 1903(5). Issue One is overruled.

## REQUIRED FINDING FOR TERMINATION UNDER ICWA

In Issue Four, S.H.R. maintains that the trial court failed to find that the continued custody of V.L.R. by the parent or custodian is likely to result in serious emotional or physical damage to the child as required by Section 1912(f) of the ICWA. The brief focuses on the trial judge's statements made at the conclusion of the hearing, but it ignores the express finding made in the termination order: "The Court finds beyond a reasonable doubt that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful, and the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." Thus, the trial court made the finding required by Section 1912(f).

### Sufficiency of the Evidence

S.H.R.'s brief additionally raises a challenge to the sufficiency of the evidence supporting the Section 1912(f) finding.[4] The brief asserts that the evidence is factually insufficient, but

---

[4] The brief states: A review of Appellee's evidence shows that the evidence is insufficient to support finding that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child as no qualified expert witness testified that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

S.H.R. also maintains that there is "no evidence" to support the finding because TDFPS failed to offer the testimony of a qualified expert witness. We are required to construe a brief reasonably, yet liberally. *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008). The statement of an issue must be treated as covering every subsidiary question that is fairly included. TEX.R.APP.P. 38.1(f). While S.H.R. stated this issue in terms of the trial court committing error by failing to make the required finding under Section 1912(f), the argument presented in the body of the brief also presents a challenge to the sufficiency of the evidence supporting the finding. We have construed the brief as challenging both the legal and factual sufficiency of the evidence supporting the finding required by Section 1912(f).

Section 1912(f) provides that no termination of parental rights may be ordered in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child. U.S.C.A. § 1912(f). In conducting legal and factual sufficiency review of the evidence in a termination case where the burden of proof is clear and convincing evidence, we ordinarily would apply the heightened standards of review found in *In re J.F.C.*, 96 S.W.3d 256 (Tex. 2002) and *In re C.H.*, 89 S.W.3d 17 (Tex. 2002). Because the burden of proof under Section 1912(f) is beyond a reasonable doubt, we must apply a different standard of review.

The Texas Supreme Court has not addressed the standard of review to be applied in a termination case under ICWA where the burden of proof is beyond a reasonable doubt. In juvenile cases, an appellate court applies the *Jackson v. Virginia* standard, rather than the civil "no evidence" standard, when reviewing challenges to the legal sufficiency of the evidence to establish the elements of the penal offense which forms the basis of the finding that the juvenile

engaged in delinquent conduct or conduct indicating a need for supervision. *In re F.J.S.*, 241 S.W.3d 565, 567 (Tex.App.--El Paso 2007, no pet.); *In re A.S.*, 954 S.W.2d 855, 858 (Tex.App.--El Paso 1997, no pet.). The Tyler Court of Appeals has held that the *Jackson v. Virginia* standard governing legal sufficiency review of the elements of the offense in a criminal case should be applied when reviewing sufficiency of the evidence under Section 1912(d) and (f). *See In re K.S.*, 448 S.W.3d 521, 539 (Tex.App.--Tyler 2014, pet. denied). Under this standard, an appellate court determines whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found that the requirements of Section 1912(d) and (f) were satisfied beyond a reasonable doubt. *In re K.S.*, 448 S.W.3d at 539, *citing Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. at 2789. Relying on the Court of Criminal Appeals' decision in *Brooks v. State*, the court of appeals further held that "Texas no longer applies a factual sufficiency review to challenges to evidence requiring proof beyond a reasonable doubt." *In re K.S.*, 448 S.W.3d at 539, *citing Brooks v. State*, 323 S.W.3d 893, 902 (Tex.Crim.App. 2010). Consequently, it reviewed the evidence under the *Jackson v. Virginia* legal sufficiency standard. *Id.* We agree with the Tyler Court of Appeals that the *Jackson v. Virginia* standard is the standard to be applied when reviewing the legal sufficiency of the evidence to support a finding under Section 1912(f).[5]

---

[5] We are not convinced that factual sufficiency review is unavailable to a parent challenging a finding under Section 1912(f). In *Brooks*, the Court of Criminal Appeals held that there is no meaningful difference between the *Jackson v. Virginia* legal sufficiency standard and the factual sufficiency standard it had formulated in *Clewis v. State*, 922 S.W.2d 126 (Tex.Crim.App. 1996) and subsequent decisions. *Brooks*, 323 S.W.3d at 902. *Brooks* does not purport to hold that factual sufficiency review is never available when the case requires proof beyond a reasonable doubt. The Supreme Court noted in *J.F.C.* that "[t]he distinction between legal and factual sufficiency when the burden of proof is clear and convincing evidence may be a fine one in some cases, but there is a distinction in how the evidence is reviewed." *In re J.F.C.*, 96 S.W.3d at 266. In a legal sufficiency review, a court looks at all the evidence in the light most favorable to the finding and it disregards all evidence all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* In a factual sufficiency review, the court does not view the evidence in the light most favorable to the challenged finding and it includes disputed evidence in its review. *See In re J.F.C.*, 96 S.W.3d at 266. It is unnecessary to resolve this issue or determine the appropriate factual sufficiency standard because we find that the evidence is legally insufficient to support the challenged finding.

- 10 -

The Bureau of Indian Affairs has created guidelines for state courts to use in Indian child custody proceedings. Bureau of Indian Affairs Guidelines for State Courts and Agencies in Indian Child Custody Proceedings, 80 Fed.Reg. 10147 (February 25, 2015). These guidelines do not have binding legislative effect, but Texas appellate courts have utilized the Guidelines when interpreting ICWA. *See In re K.S.*, 448 S.W.3d 521, 529 (Tex.App.--Tyler 2014, pet. denied) (utilizing the earlier version of the Guidelines); *In re J.J.C.*, 302 S.W.3d 896, 900 (Tex.App.-- Waco 2009, no pet.)(same); *In re R.R.*, 294 S.W.3d at 217 (same); *see also Yavapai-Apache Tribe v. Mejia,* 906 S.W.2d 152, 163-64 (Tex.App.--Houston [14th Dist.] 1995, orig. proceeding). The updated BIA Guidelines address the applicable standards of evidence. Section D.3(b) states:

> The court may not order a termination of parental rights unless the court's order is supported by evidence beyond a reasonable doubt, *supported by the testimony of one or more qualified expert witnesses*, that continued custody of the child by the parent or Indian custodian is likely to result in serious harm to the child. [Emphasis added].

80 Fed.Reg. 10156. Thus, the challenged finding cannot stand unless it is supported by the testimony of a qualified expert witness.

Section D.4 pertains to the qualifications an expert witness must possess. It provides that:

(a) A qualified expert witness should have specific knowledge of the Indian tribe's culture and customs.

(b) Persons with the following characteristics, in descending order, are presumed to meet the requirements for a qualified expert witness:

(1) A member of the Indian child's tribe who is recognized by the tribal community as knowledgeable in tribal customs as they pertain to family organization and childrearing practices.

- 11 -

(2) A member of another tribe who is recognized to be a qualified expert witness by the Indian child's tribe based on their knowledge of the delivery of child and family services to Indians and the Indian child's tribe.

(3) A layperson who is recognized by the Indian child's tribe as having substantial experience in the delivery of child and family services to Indians, and knowledge of prevailing social and cultural standards and childrearing practices within the Indian child's tribe.

(4) A professional person having substantial education and experience in the area of his or her specialty who can demonstrate knowledge of the prevailing social and cultural standards and childrearing practices within the Indian child's tribe.

80 Fed.Reg. 10157.

After reviewing the entire record, we conclude that the challenged finding is not supported by the testimony of a qualified expert witness. The caseworker, Lizette Frias, was not shown to possess the required knowledge or expertise. There is no evidence that Frias is a member of the Oglala Sioux tribe or another tribe, or that she is recognized by any tribe as having substantial experience in the delivery of child and family services to Indians. Further, there is no evidence that she has knowledge of the prevailing social and cultural standards and childrearing practices within the Oglala Sioux tribe. Even if Frias is a qualified expert witness, she did not testify that continued custody of the child by S.H.R. is likely to result in serious harm to the child.

TDFPS responds that it was not required to offer expert testimony regarding the continued custody of the child by S.H.R. because the requirement of Section 1912(f) is not implicated in this case given that S.H.R. has not had custody of V.L.R. for more than twelve years. It cites two cases in support of this argument: *Adoptive Couple v. Baby Girl*, --- U.S. ---, 133 S.Ct. 2552, 186 L.Ed.2d 729 (2013) and *In re S.B.C.*, 340 P.3d 534 (Mont. 2014). In the *Baby Girl* case, Birth Mother and Biological Father, who was a member of the Cherokee Nation,

were engaged, but not married, when she became pregnant. *Baby Girl*, 133 S.Ct. at 2558. Biological Father asked Birth Mother to move up the wedding date and he refused to provide any support until after they were married. *Id.* Birth Mother broke off the engagement and decided she would put Baby Girl up for adoption after Biological Father indicated to her that he would rather have his parental rights terminated than pay child support. *Id.* During the adoption process, Birth Mother's attorney contacted the Cherokee Nation to determine whether Biological Father was formally enrolled. *Id.* Due to errors made in the spelling of Biological Father's name and regarding his birthdate, the Cherokee Nation was unable to verify Biological Father's membership in the tribal records. *Id.* Birth Mother selected Adoptive Couple through a private adoption agency and they supported her emotionally and financially during the pregnancy. *Id.* Following Baby Girl's birth, Birth Mother relinquished her parental rights and consented to the adoption, and Adoptive Couple initiated adoption proceedings in South Carolina. *Id.* Biological Father opposed the adoption. *Id.*, 133 S.Ct. at 2558-59. The Family Court concluded that Adoptive Couple had not carried the heightened burden under Section 1912(f) of proving that Baby Girl would suffer serious emotional or physical damage if Biological Father had custody. *Id.* at 2559. Consequently, the Family Court denied Adoptive Couple's petition for adoption and awarded custody to Biological Father. *Id.* Baby Girl, who was over two years of age at the time of trial, had lived with Adoptive Couple since shortly after her birth, and she had never met Biological Father prior to the Family Court giving him custody of her. *Id.*, 133 S.Ct. at 2556, 2559. The South Carolina Supreme Court affirmed the judgment of the Family Court. *Id.* at 2559.

The Supreme Court addressed the meaning of the phrase "continued custody" used in Section 1912(f), and held that it means "custody that a parent already has (or at least had at some

point in the past)." *Baby Girl*, 133 S.Ct. at 2560. The Court acknowledged that "continued custody" could mean custody which had "resumed after interruption." *Id.* It concluded that Section 1912(f) does not apply in cases where the Indian parent never had custody of the Indian child. *Id.*

TDFPS also directs our attention to *In re S.B.C.*, 340 P.3d 534 (Mont. 2014), which is another case where the biological father never had custody of the child. The Montana Supreme Court applied *Baby Girl* and held that Section 1912(f) was inapplicable because there was never any "custody" by the biological father that could be continued within the meaning of Section 1912(f). *In re S.B.C.*, 340 Pd.2d at 543.

The instant case is factually distinguishable from both *Baby Girl* and *In re S.B.C.* because this is not a situation where the Indian parent never had custody of the child. The record reflects that S.H.R. had custody of V.L.R. at some point in the past. The Supreme Court acknowledged in *Baby Girl* that the phrase "continued custody" as used in Section 1912(f) could mean custody that is resumed after interruption. We decline to extend *Baby Girl* to a scenario where an Indian parent previously had custody of the child because it is inconsistent with the opinion. Further, such a holding would render Section 1912(f) applicable only where the Indian parent has legal custody of the child when the custody proceeding is initiated. This interpretation eviscerates the statute and is contrary to the stated purposes of ICWA. Because the evidence is legally insufficient to support the finding under Section 1912(f), we sustain Issue Four. It is unnecessary to consider whether the evidence is also factually insufficient. Further, it is unnecessary to address Issues Two, Three, Five, and Six. Having sustained Issue Four, we reverse the termination order and render judgment denying the petition for termination of S.H.R.'s parental rights.

November 18, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.