ANN CRAWFORD McCLURE, Chief Justice
The Navajo Nation appeals from a judgment terminating the parental rights of S.C. to her son, J.J.T. Finding that the trial court erred by not permitting the Navajo Nation to intervene, we reverse the judgment and remand the cause for a new trial.
FACTUAL SUMMARY
S.C. ("Shelly") is the biological mother of J.J.T. ("Jake").[1] Jake is a member of the Navajo Nation (the Nation). On January 19, 2016, Shelly took then five-month-old Jake to a pediatrician for his two-month shots. The pediatrician noticed that Jake's head circumference appeared to be large for his age, and he ordered an ultrasound of the brain which indicated the presence of two hematomas. Jake was taken to an emergency room and an MRI confirmed the hematomas. Skeletal x-rays revealed that Jake had multiple rib fractures on his right side, a left rib fracture in the process of healing, a right fibula buckle fracture, a right tibia fracture, and a left fibula fracture. Jake subsequently underwent brain surgery to relieve the pressure on his brain. Shelly told hospital personnel that she was Jake's primary caregiver and Jake had not been in any accidents, and he had not fallen or suffered any accidental trauma. Jake's doctors ruled out diseases which might account for the injuries and concluded that his injuries were the result of non-accidental trauma. Hospital personnel made a report to the Texas Department of Family and Protective Services. The Department filed a petition seeking to terminate the parental rights of both parents, and the trial court entered emergency orders removing Jake from his parents and appointing the Department as the temporary managing conservator of the child. Jake was placed with a non-Indian foster family, and by all accounts, he is *877 thriving, his medical, physical, and emotional needs are being met, and he is closely bonded with the family.
On March 1, 2016, the Department gave notice to the Nation of the pending suit involving Jake. Further, on April 20, 2016, it notified the Nation of a hearing scheduled for July 22, 2016. On August 3, 2016, the Nation notified the Department that Jake is eligible to be enrolled as a member of the Nation, and it subsequently provided the name of the ICWA social worker assigned to the case to coordinate services with the Department. The Nation did not formally intervene in the case.
The trial court conducted the bench trial on June 12, 2017, but it did not provide notice to the Nation of the trial setting. On the day of trial, both Shelly and Steve voluntarily relinquished their parental rights. Counsel for the Department informed the trial court that Crescentia Tso, a representative of the Nation, had requested that she be allowed to testify telephonically regarding best interest, and the trial court agreed. Prior to that testimony, the Department's counsel also made the trial court aware that Ms. Tso had informed him that the Nation was a party to the proceeding, and as the Nation's representative, she should be allowed to hear all of the proceeding and not be excluded under the Rule of Witnesses. Counsel for both Shelly and Jake objected. The trial court ruled that Ms. Tso could testify, but she would not be treated as a party. Ms. Tso proceeded to testify regarding her involvement in the case and as an expert witness. She was aware that both parents had voluntarily relinquished their parental rights, and in her opinion, those relinquishments were in the best interest of the child because the parents had been given over a year to engage in services and obtain the help they need, but neither of them had successfully completed any of the recommended services. The Nation did not object to the current placement of the child because all family members in Texas were ruled out and it had been difficult to find an ICWA-compliant home for the child. Regarding Jake's future placement, the Nation had located a Navajo home. The adoptive mother is Navajo and her husband is Hispanic. The home study process and background checks had been completed, and the couple was ready to receive Jake. Ms. Tso agreed that there would need to be a plan to transition Jake to this home in order to minimize emotional trauma because he was bonded to his foster family.
During cross-examination, one of the attorneys stated that the Nation had not intervened, and Ms. Tso stated, "I think we are intervening at this moment." When the trial court asked Ms. Tso to explain how she thought she was intervening, Ms. Tso explained: "In other ICWA cases, the Navajo Nation is considered a party, we're not considered a witness and so in other states the ICWA worker has attended the entire court hearing and so based upon the testimonies that are given, we take that into consideration based on the information that's being provided to us." Ms. Tso expressly relied on Section 1911(c) in support of the Nation's request to intervene. The trial court concluded that the Nation had not filed a written intervention and the request to intervene made on the day of trial was too late. Consequently, Ms. Tso was excluded from hearing any of the testimony and the Nation was not allowed to participate in the final hearing. The trial court terminated the parental rights of both Shelly and Steve, and it appointed the Department as the Permanent Managing Conservator of Jake. The court ordered that Jake remain in his current foster home. The Nation formally intervened after the trial and it filed a motion requesting a placement hearing. The Nation filed *878 notice of appeal, but neither Shelly nor Steve have appealed the termination of their parental rights.
DENIAL OF RIGHT TO INTERVENE
The Nation raises three issues asserting that the order terminating Shelly's parental rights must be invalidated because provisions of the Indian Child Welfare Act were violated. First, it argues that the evidence is legally and factually insufficient to support the termination of Shelly's parental rights because there is no evidence showing that continued custody of the child by the parent would result in serious emotional or physical damage to the child. See 25 U.S.C.A. § 1912(f). In the second issue, the Nation contends that Section 1912(a) was violated because it was not provided notice of the foster placement hearing. See 25 U.S.C.A. § 1912(a). Finally, it its third issue, the Nation asserts that the order terminating Shelly's parental rights and placing the child with the non-Indian family must be invalidated because the trial court refused to permit the Nation to intervene. The Department concedes that this issue must be sustained. Therefore, we will begin with Issue Three.
Indian Child Welfare Act
It is undisputed that Jake is a member of the Navajo Nation. Consequently, the requirements of ICWA apply to this case. See 25 U.S.C.A. § 1912(f) ; In re of V.L.R. , 507 S.W.3d 788, 792 (Tex.App.-El Paso 2015, no pet.) (observing that ICWA applies to a termination of parental rights proceeding in a state court when the court knows or has reason to know that an Indian child is involved in a child custody proceeding). Under Section 1914, the Indian child's tribe may petition any court of competent jurisdiction to invalidate any action for foster care placement or termination of parental rights under state law upon a showing that Sections 1911, 1912, or 1913 were violated. See 25 U.S.C.A. § 1914. Thus, the Nation has standing to bring this appeal challenging the trial court's order.
The trial court refused to allow the Nation to intervene because its request was untimely. Section 1911(c) expressly provides: "In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe shall have a right to intervene at any point in the proceeding." 25 U.S.C.A. § 1911(c). Giving effect to the plain language of the statute, we conclude that a request to intervene is not untimely even if it is made at the final hearing. In re Guardianship of Q.G.M. , 808 P.2d 684, 688 (Okla. 1991) (holding that an Indian tribe which seeks to intervene in the proceedings is not required to intervene at the first stage of the proceedings and it may wait until the dispositional stage to intervene). Courts should not infer a waiver of the right to intervene simply because the Indian's child tribe does not intervene at the first opportunity. See ids="10376051" index="7" url="https://cite.case.law/p2d/808/684/#p688">id.
The court also denied the request to intervene because the Nation had not filed a written pleading. While Rule 60 of the Texas Rules of Civil Procedure requires a party to file a written pleading to intervene, Section 1911(c) does not require that the intervention be made in writing. The issue before us, then, is whether Section 1911(c) preempts Rule 60 's requirement of a written intervention.
Federal law preempts state law when: (1) Congress has expressly preempted state law, (2) Congress has installed a comprehensive regulatory scheme in the area, removing the entire field from the state realm, or (3) state law directly conflicts with the force or purpose of federal law.
*879 In re J.J.C. , 302 S.W.3d 896, 899 (Tex.App.-Waco 2009, no pet.) ; In re W.D.H. , 43 S.W.3d 30, 35-36 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). Congress did not state when it enacted the ICWA that it was preempting state law concerning child custody proceedings or procedural rules applying to such proceedings. See In re J.J.C. , 302 S.W.3d at 899 ; In re W.D.H. , 43 S.W.3d at 35-36. Further, Congress has not stated an intention for the ICWA to remove the area of child custody proceedings from the state realm. See In re J.J.C. , 302 S.W.3d at 899 ; In re W.D.H. , 43 S.W.3d at 35-36. Thus, preemption exists here only if we find that Rule 60 's requirement of a written pleading directly conflicts with the purpose of Section 1911(c). See In re J.J.C. , 302 S.W.3d at 899. There are two types of conflict preemption: (1) it is impossible to comply with both the federal and state law, and (2) the state law stands as an obstacle to the accomplishment and execution of congressional objectives. See In re J.J.C. , 302 S.W.3d at 899 ; In re W.D.H. , 43 S.W.3d at 36.
The recognized purpose of the ICWA is to protect the Indian family, children, and the tribe from separation. See In re Q.G.M. , 808 P.2d at 688 ; 25 U.S.C.A. § 1902 (1978)( "The Congress hereby declares that it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs."); In re V.L.R. , 507 S.W.3d at 792 ("Congress enacted ICWA in 1978 in response to a rising concern over the consequences to Indian tribes, Indian families, and the children of abusive child welfare practices that resulted in the separation of Indian children from their families and tribes."), citing Mississippi Band of Choctaw Indians v. Holyfield , 490 U.S. 30, 32, 109 S.Ct. 1597, 1599-1600, 104 L.Ed.2d 29 (1989). Section 1911(c) advances this purpose by giving the child's tribe the "right to intervene at any point in the proceeding." Intervention by the tribe insures that the child will not be removed from the Indian community and consequently lose touch with Indian traditions and heritage. In re Q.G.M. , 808 P.2d at 688. A state procedural rule which would deny the right to intervene in a child custody proceeding because the tribe did not file a written pleading prior to the hearing directly conflicts with this purpose. Accordingly, we conclude that Section 1911(c) preempts Rule 60 's requirement of a written pleading because it stands as an obstacle to the accomplishment of congressional objectives. We further hold that a request to intervene made pursuant to Section 1911(c) can be made verbally during a hearing as in this case.
As noted above, the Department concedes that the trial court reversibly erred by denying the Navajo Nation's request to intervene in this case pursuant to Section 1911(c). Issue Three is sustained. It is unnecessary to address Issue Two pertaining to the failure to provide notice of the placement hearing to the Nation.
SUFFICIENCY OF THE EVIDENCE
In Issue One, the Nation challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that the evidence, including the testimony of a qualified expert witness, demonstrates that the continued custody of the child by a parent or Indian Custodian, is likely to result in serious emotional or physical damage to the child, and is not in the *880 child's best interest. See 25 U.S.C.A. § 1912(f).
This court has previously held that when reviewing a legal sufficiency challenge to the Section 1912(f) finding, we will apply the Jackson v. Virginia[2] standard, rather than the civil "no evidence" standard. In re V.L.R. , 507 S.W.3d at 795 ; see In re K.S. , 448 S.W.3d 521, 539 (Tex.App.-Tyler 2014, pet. denied). Under this standard, an appellate court determines whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found that the requirement of Section 1912(f) was satisfied beyond a reasonable doubt. In re V.L.R. , 507 S.W.3d at 795 ; In re K.S. , 448 S.W.3d at 539, citing Jackson v. Virginia , 443 U.S. at 319, 99 S.Ct. at 2789.
The evidence established that five-month-old Jake suffered serious non-accidental injuries to his brain and numerous broken bones while in the care of his parents. There is no evidence that his parents sought medical care for any of these injuries. The trier of fact could infer from the evidence that Jake was physically abused on multiple occasions because the two brain injuries occurred at different times and the broken bones were in different stages of healing. As a result of these injuries, Jake had significant emotional and physical needs during his recovery. His foster mother testified that Jake woke up eight to ten times every night due to the pain he was suffering, and it was difficult to pick up Jake or even change his diaper without causing him pain. Consequently, she had to be extremely careful and attentive to his needs. It is unknown what Jake's physical and emotional needs may be in the future. At the time he was removed from his parents' care, Jake was developmentally delayed, but he has received services to address those issues. Jake also has a lung disease which requires him to be closely monitored by a doctor until he is three years of age. The caseworker, Aimee Rivera, testified that Shelly was unwilling, at the time of the intake or at any time since, to address Jake's emotional and physical needs. Further, Shelly did not demonstrate the ability or willingness to protect or provide for Jake. The Department created a service plan for the parents, but neither of them successfully completed any of the recommended services. Both Tso and Rivera testified that termination of Shelly's parental rights was in the child's best interest.
When the evidence is viewed in the light most favorable to the challenged finding, a rational trier of fact could have found beyond a reasonable doubt that the continued custody of the child by Shelly is likely to result in serious emotional or physical damage to the child, and is not in the child's best interest. See In re S.R. , 323 N.W.2d 885, 887-88 (S.D. 1982) (evidence was sufficient to prove beyond a reasonable doubt that mother's continued custody of Indian child was likely to result in serious emotional or physical damage to child, as required for termination of her parental rights under ICWA, where mother had rarely seen child in two years since her birth, where child had special needs, and where mother showed no sense of responsibility or significant degree of interest in child). It is unnecessary to address whether the evidence is also factually sufficient to support the Section 1912(f) finding because we have determined in our review of Issue Three that the termination order must be reversed and the cause remanded for a new trial. Issue One is overruled. Having sustained Issue Three, we reverse the trial court's order with respect to the termination of Shelly's parental rights and *881 the placement of the child, and we remand the cause to the trial court for a new trial.

Rule 9.8(b)(2) requires an appellate court to use in its opinion an alias to refer to a minor in the opinion, and if necessary to protect the minor's identity, the minor's parent, or other family member. Tex.R.App .P. 9.8(b)(2). The term alias means the person's initials or a fictitious name. Tex.R.App .P. 9.8(a). We have opted to use fictitious names rather than initials in this case. The opinion will refer to Appellant as "Shelly," to the child's father as "Steve," and to the child as "Jake."

Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).