**Opinion filed December 18, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-25-00187-CV

_____

## IN THE INTEREST OF Z.F., A CHILD

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 11527-CX**

### M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from a final order in which the trial court terminated the parental rights of the mother and presumed father to the child, Z.F.[1] *See* TEX. FAM. CODE ANN. § 161.001 (West Supp. 2024).  Only the mother appealed. On appeal, Appellant contends that the Department of Family and Protective Services (the Department) and the trial court failed to comply with the Indian Child Welfare Act.  *See* 25 U.S.C. §§ 1901–1963 (1978).  She also challenges the sufficiency of the evidence to support the trial court's finding that termination of her

---

[1]We use initials to refer to the child.  *See* TEX. R. APP. P. 9.8(b).

parental rights is in the child's best interest. *See id.* § 161.001(b)(2). We reverse the order of the trial court and remand for further proceedings.

*Factual and Procedural Background[2]*

The Department intervened on July 11, 2024, the day Z.F. was born. When Appellant gave birth to Z.F., both she and the child tested positive for cocaine. The following day, the Department sought and was granted temporary managing conservatorship of Z.F.

While the case was pending, Z.F.'s father disclosed Cherokee ancestry. The Department filed a notice of the pending suit that was purportedly sent by certified mail with return receipt requested to three tribes and the Southern Plains Regional Director of the Bureau of Indian Affairs (BIA). Two tribes—the Eastern Band of Cherokee Indians (EBCI) and Cheroke Nation—responded in writing that Z.F. was neither registered nor eligible to register as a tribe member. No response was received from the third tribe, the United Keetoowah Band of Cherokee Indians (UKB). The certificate of service in the Department's notice lists the correct addresses for the BIA Regional Director and UKB.

At the final termination hearing in June 2025, the Department presented evidence of Appellant's cocaine addiction, her ongoing case with the Department involving her older children, and Z.F.'s care, safety, and well-being in her current adoptive placement. At the conclusion of the hearing, the trial court terminated Appellant's parental rights under Section 161.001(b)(1)(D), (E), and (R), and found termination to be in the best interest of the child. *See* FAM. § 161.0001(b)(1)(D), (E), (R), (b)(2). This appeal followed.

---

[2]Because our resolution of Appellant's first issue is dispositive, we recite only the facts relevant to that issue.

*Indian Child Welfare Act*

In her first issue, Appellant contends that the Department failed to comply with the requirements of the ICWA when it failed to present proof that the UKB received notice of the pending suit. *See* 25 U.S.C. § 1912. Appellant is correct; the Department did not file the return receipt after mailing its notice of the pending proceeding to the UKB. For the reasons set forth below, we sustain Appellant's first issue.

Congress enacted the Indian Child Welfare Act (ICWA) in 1978 out of concern that "alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies." 25 U.S.C. § 1901(4); *see Haaland v. Brackeen*, 599 U.S. 255, 265 (2023). The ICWA establishes minimum standards for child custody proceedings involving Indian children[3] to protect their best interests, and to promote the stability of Indian tribes and families. *Id.* § 1902. Tribal courts have exclusive jurisdiction over proceedings involving Indian children who reside or are domiciled within the tribe's reservation. 25 U.S.C. § 1911(a); *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 36 (1989); *In re Navajo Nation*, 587 S.W.3d 883, 888 (Tex. App.—Amarillo 2019, orig. proceeding). With respect to Indian children not domiciled within their tribe's reservation, state courts exercise jurisdiction concurrently with tribal courts with a presumption in favor of tribal court jurisdiction. 25 U.S.C. § 1911(b); *Holyfield*, 490 U.S. at 36 (on petition in state court proceedings for foster care placement or termination of parental rights, the proceeding must be transferred to the tribal court absent good cause, an objection by either parents, or declination by the tribe); *In re Navajo Nation*, 587 S.W.3d at 888.

---

[3]An "Indian child" is defined as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4).

In an involuntary termination proceeding, the application of the ICWA is triggered when the trial court "knows or has reason to know that an Indian child is involved." 25 U.S.C. § 1912(a), (f); *see M.Y. v. Texas Dep't of Fam. & Protective Servs.*, 667 S.W.3d 502, 507 (Tex. App.—Austin 2023, no pet.); *In re S.J.H.*, 594 S.W.3d 682, 688 (Tex. App.—El Paso 2019, no pet.); *see also K.N. v. State*, 856 P.2d 468, 474 n.8 (Alaska 1993). A trial court has reason to know that a child is an Indian child if "[a]ny participant in the proceeding . . . informs the court that it has discovered information indicating that the child is an Indian child." 25 C.F.R. § 23.107(c)(2) (2016). It becomes the responsibility of the party seeking the termination of parental rights—the Department in this case—to "notify . . . the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." 25 U.S.C. § 1912(a); 25 C.F.R. § 23.111. The trial court must then ensure that the Department files its notice "together with any return receipts or other proof of service." 25 C.F.R. § 23.111(a)(2).

Once the trial court has "reason to know that an Indian child is involved," the child is treated as such and the ICWA governs the proceedings. 25 U.S.C. § 1912(a), (f); *Haaland*, 599 U.S. at 266. Notably, this includes the heightened standard of proof in termination cases from clear and convincing evidence to beyond a reasonable doubt. 25 U.S.C. § 1912(f); *see also In re V.L.R.*, 507 S.W.3d 788, 795 (Tex. App.—El Paso 2015, no pet.) (agreeing that the "beyond a reasonable doubt standard" applicable in criminal and juvenile delinquency proceedings applies in ICWA termination proceedings); *In re K.S.*, 448 S.W.3d 521, 539 (Tex. App.—Tyler 2014, pet. denied) (reaching similar conclusion). If the record is inconclusive as to the child's status, state courts with "reason to know the child is an Indian child" must:

4

(1) Confirm, by way of a report, declaration, or testimony included in the record that the agency or other party used due diligence to identify and work with all of the Tribes of which there is reason to know the child may be a member (or eligible for membership), to verify whether the child is in fact a member (or a biological parent is a member and the child is eligible for membership); and

(2) Treat the child as an Indian child, unless and until it is determined on the record that the child does not meet the definition of an "Indian child" in this part.

25 C.F.R. § 23.107(b).

A trial court's failure to follow the ICWA may be raised for the first time on appeal. *See* 25 U.S.C. § 1914; *M.Y.*, 667 S.W.3d at 505 (quoting *In re J.C.C.*, 302 S.W.3d 896, 899 (Tex. App.—Waco 2009, no pet.)). The applicability of the ICWA is a question of law that we review de novo. *M.Y.*, 667 S.W.3d at 505; *In re A.W.*, 590 S.W.3d 68, 71 (Tex. App.—Texarkana 2019, pet. denied).

Here, the father's disclosure created the presumption that Z.F. was an Indian child, and the ICWA—including the notice and due diligence provisions of the implementing federal regulations—applied to the termination proceedings against the parents. *See* 25 U.S.C. §§ 1902, 1921 (ICWA establishes the minimum standards, preempted only by state or federal law that creates "a higher standard of protection to the rights of the parent or Indian custodian of an Indian child."); 25 C.F.R. § 23.106; *M.Y.*, 667 S.W.3d at 508. On appeal, the Department acknowledges its failure to file the requisite "return receipts or other proof of service," but argues that, pursuant to Rule 21a of the Texas Rules of Civil Procedure, the certificate of service in its filed notice is prima facie evidence that the UKB was served. *See* 25 C.F.R. § 23.111(a)(2); Tex. R. Civ. P. 21a(e).

First, because Congress enacted the ICWA pursuant to its Article I powers, "state law is naturally preempted to the extent of any conflict with a federal statute." *Haaland*, 599 U.S. at 287 (quoting *Crosby v. Nat'l Foreign Trade*

5

*Comm'n*, 530 U.S. 363, 372 (2000)). As discussed, the ICWA applied to the underlying suit unless and until it was determined on the record that Z.F. was not an Indian child. 25 C.F.R. § 23.107(b)(2). Consequently, the Department was required to comply with the "minimum Federal standards" established by the ICWA rather than the less specific Texas Rules of Civil Procedure, to the extent that Rule 21a conflicts with those standards.[4] *See* 25 U.S.C. §§ 1902, 1921; 25 C.F.R. § 23.106; *Haaland*, 599 U.S. 287. In that regard, Section 23.111(a)(2) provided that the trial court must "ensure that: . . . An original or a copy of each notice sent under this section is filed with the court *together with any return receipts or other proof of service*." 25 C.F.R. 23.111(a)(2) (emphasis added); *see* SUPREME COURT CHILDREN'S COMM., TEXAS CHILD WELFARE LAW BENCH BOOK 197 (2025), https://www.texaschildrenscommission.gov/media/4sahodqj/2025 texas child welfare-bench-book-online.pdf (providing that, with respect to the ICWA, "[a] copy of each notice sent, with the return receipt or other proof of service must be filed with the court and should be admitted into evidence at trial.").

Second, by its express terms, Rule 21a governs service on parties and their attorneys of record. The UKB is not a party to this action at this time. Accordingly, the presumption of service contemplated by the rule is inapplicable, particularly when the ICWA requires the filing of the return receipt or other proof of service.

---

[4]We are not asked to determine whether the ICWA preempts the Texas Family Code or specific provisions of the Texas Family Code, and we note a split in authority on the issue. *Compare In re R.H.*, 693 S.W.3d 846, 853 (Tex. App.—Fort Worth 2024, pet. denied) (The ICWA does not preempt the Family Code.), *with In re C.J.B.*, 681 S.W.3d 778, 784–85 (Tex. App.—Houston [14th Dist.] 2023, pet. denied) (noting "4-to-1 split" among the courts of appeals but following its precedent that the ICWA preempts the Family Code (citing *In re W.D.H.*, 43 S.W.3d 30 (Tex. App.—Houston [14th Dist.] 2001, pet. denied))). Because the trial court has not made the preliminary determination—absent proper notice to the UKB and proof of same from the Department—that the child in this case is an "Indian child" for purposes of the ICWA, we expressly do not address that question in this appeal.

Third, assuming the UKB received the initial notice, its lack of response did not relieve the Department of its duty to exercise due diligence in determining whether Z.F. was an Indian child of the UKB. *See* 25 C.F.R. § 23.107(b)(1); *see also Jimmy E. v. Dep't of Health & Social Servs.*, 529 P.3d 504, 518–20 (Alaska 2023) (concluding that the Office of Children's Services failed to use due diligence to identify and notify relevant tribes).

We have not previously addressed what constitutes "due diligence" in this context. But based on the ICWA, its implementing regulations, and BIA guidelines, "due diligence" is more than a single attempt to contact the tribe. For instance, Section 23.105(c) provides that the state agency must "seek assistance in contacting the Indian Tribe from the BIA" if "the Tribe contacted fails to respond to written *inquiries*." 25 C.F.R. § 23.105(c) (emphasis added). Though not controlling, the BIA guidelines recommend contacting the Tribal ICWA agent "by telephone and/or email" in addition to written inquiries and to "document their conversations with Tribal agents." U.S. DEP'T OF INTERIOR, BUREAU OF INDIAN AFFS., GUIDELINES FOR IMPLEMENTING THE INDIAN CHILD WELFARE ACT 21 (2016), https://www.bia.gov/sites/default/files/dup/assets/bia/ois/pdf/idc2-056831.pdf; *see Jimmy E.*, 529 P.3d at 514 n.27.

We agree with our sister courts who have recognized that the Indian child presumption "does not necessarily apply in perpetuity absent a response from tribal authorities . . . 'to multiple repeated requests for verification . . . and the agency has repeatedly sought the assistance of BIA.'" *M.Y.*, 667 S.W.3d at 507 n.5 (quoting 81 Fed. Reg. 28778-01, 38806 (June 14, 2016), 2016 WL 3228279, at *38806; *In re S.J.H.*, 594 S.W.3d 682, 688 n.6 (Tex. App.—El Paso 2019, no pet.) (same). This aligns with precedent from other jurisdictions interpreting "due diligence" as more than "preliminary steps[] without any clear follow-up." *Jimmy E.*, 529 P.3d at 520 (finding a lack of due diligence because the state agency provided "little to no

7

information about what [it] did after sending its initial letter of notice and inquiry"); *see also In re D.J.*, 862 S.E.2d 766 (N.C. 2021) (upholding trial court's determination that child was not Indian child after state agency submitted letters to and responses from many tribes indicating that child was not member and confirmation from BIA that agency had conducted due diligence into trial court's records); *In re N.K.*, 851 S.E.2d 321, 335 (N.C. 2020) (holding that trial court failed to ensure due diligence when there was only one response from all potential tribes in the record and no indication that the agency contacted BIA in the record).

In the present case, there is no record of the Department's efforts to ascertain whether Z.F. was a member of the UKB after mailing the initial notice. The Department caseworker noted Z.F.'s "possible American Indian child status" in the status reports and permanency reports filed with the trial court in September 2024, and January and April 2025. In each, Z.F.'s Indian child status is listed as "yet to be determined."

At a status hearing held on September 17, 2024, the trial court asked: "Any Native American ancestry?" The Department responded: "Native American ancestry had been reported. I sent the notice out on August 9th. We've only gotten one letter back, but it was that the child is not registered and is not eligible to register with that tribe." At a permanency hearing held on January 6, 2025, the trial court inquired: "Any Native American ancestry for the baby?" The Department replied: "I believe some had been reported previously, and we sent notices and no tribe said that she was eligible or registered." At the final termination hearing, the trial court asked the Department: "And throughout the case, there has never been any Native American ancestry that's identified?" The Department responded "No, Your Honor, I don't believe so." But after trial commenced, Appellant interjected:

> [APPELLANT]: Judge . . . there was a notice of pending custody proceeding involving an Indian child filed in this case. I don't know if anything ever came of it, but just--

8

THE COURT: But no response?

[THE DEPARTMENT]: No, I don't--we never received a response that--

[APPELLANT]: I never did either but just wanted to make that clear.

THE COURT: Thank you.

The reporter's record does not affirmatively show that the Department disclosed to the trial court that a notice had been sent to the UKB or that the UKB had not responded to the notice. Therefore, the trial court failed to confirm that the Department used due diligence to verify Z.F.'s possible UKB membership. And as previously noted, neither a return receipt nor other proof of service was filed. *See* 25 C.F.R. § 23.111(a)(2). These omissions constitute reversible error. *See* 25 U.S.C. § 1914 (authorizing courts to invalidate termination of parental rights if ICWA provisions are not met).

Accordingly, we sustain Appellant's first issue. Because reversal is required under the ICWA, the only remaining question is the remedy. *See id.*; *M.Y.*, 667 S.W.3d at 508.

The Department requests that we abate this appeal and direct the trial court to hold a hearing for the purpose of determining whether the Department used due diligence. Rule 44 of the Texas Rules of Appellate Procedure allows an appellate court to correct an error that prevents the proper presentation of a case to the court of appeals. TEX. R. APP. P. 44.4(b); *see M.Y.*, 667 S.W.3d at 509; *S.J.H.*, 594 S.W.3d at 691–92. However, the failure to ascertain Z.F.'s status as an Indian child of the UKB is not the type of remediable defect or irregularity that can be corrected under Rule 44.4. *See* TEX. R. APP. P. 44.4; *see, e.g.*, *Fakeye v. State*, 227 S.W.3d 714, 718 (Tex. Crim. App. 2007) (trial court's failure to admonish the appellant as to the deportation consequences of his plea was not a remediable error under Rule 44.4

9

because it did not prevent the proper presentation of the case to the appellate court).[5] Rather than simply excluding necessary information from trial, the erroneous disregard of the ICWA's notice and due diligence requirements potentially altered the entire course of the proceeding, and forms the basis of the appeal. *See Fakeye*, 227 S.W.3d at 718; *Shumate v. State*, 649 S.W.3d at 244 n.3 (Tex. App.—Dallas 2021, no pet.).

Furthermore, abating this accelerated appeal[6] for the trial court's determination risks preventing the full and fair litigation of Z.F.'s Indian child status and subsequent application of the ICWA. *See S.J.H.*, 594 S.W.3d at 691. With a remand, the trial court is in the best position to navigate the issues that will inevitably arise once it reaches a final determination regarding Z.F.'s Indian child status. Based on the record before us, the ICWA applies in this case, and continues to apply unless and until UKB officials deny that Z.F. is an Indian child. *See* 25 C.F.R. § 23.107. If the UKB fails to respond following repeated contact attempts, and a final citizenship determination from relevant authorities is not forthcoming, the trial court may, in its discretion, determine Z.F.'s Indian child status. Consequently, we conclude that the best course of action in this circumstance is to reverse the

---

[5]The Court of Criminal Appeals explained:

> Courts of appeals properly use Rule 44.4 "[w]hen a trial court has erroneously withheld information necessary to evaluate a defendant's claim on appeal (e.g. failure to file required findings of fact) or has prevented the defendant from submitting information necessary to evaluate his claim (e.g. his refusing to permit an offer of proof). . . ." In the cases in which abatement was necessary or proper, the trial courts' errors usually involved failure to conduct a required hearing or erroneously excluding testimony in a hearing.

*Fakeye*, 227 S.W.3d at 717–18 (internal citations omitted).

[6]The Texas Rules of Judicial Administration give appellate courts 180 days to bring appeals in suits for termination of the parent-child relationship to a final disposition. TEX. R. JUD'L ADMIN. 6.2(a). In accordance with Rule 6.2(a), we must resolve this appeal by January 2, 2026. Abating this case with instructions to hold a hearing to determine Z.F.'s potential tribal citizenship so that we may bring this case to a final disposition before the deadline set by Rule 6.2(a) is not feasible and encourages further shortcuts of the ICWA's procedures. *See S.J.H.*, 594 S.W.3d at 691 n.12.

termination order and remand for further proceedings in the trial court. *See M.Y.*, 667 S.W.3d at 509; *S.J.H.*, 594 S.W.3d at 691–92.

We finally note that "[a] violation of the ICWA notice provisions may be cause for invalidation of the termination proceedings at some later, distant point in time." *In re R.R., Jr.*, 294 S.W.3d 213, 225 (Tex. App.—Fort Worth 2009, no pet.) (citing 25 U.S.C.A. § 1914). Thus, a reversal and remand of this case for a thorough review of compliance with the strict notice requirements of ICWA will be beneficial by providing assurances that the termination and eventual adoption of the child will not later be invalidated for ICWA non-compliance. *See id*. at 225–26.

### *This Court's Ruling*

Accordingly, we reverse the order of the trial court insofar as it terminated Appellant's parental rights, and we remand this cause to the trial court for further proceedings consistent with this opinion. Any proceedings on remand must be commenced within 180 days of this court's mandate. TEX. R. APP. P. 28.4(c).

JOHN M. BAILEY
CHIEF JUSTICE

December 18, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.