**In the Interest of J.J.C., a Child**

**and**

**In the Interest of A.M.C., a Child.**

Nos. 10-09-00269-CV, 10-09-00270-CV.

Court of Appeals of Texas,
Waco.

Dec. 30, 2009.

Nita C. Fanning, Law Office of Nita Fanning, Waco, TX, for Appellant/Relator.

John W. Segrest, McLennan County District Attorney, Waco, TX, for Appellee/Respondent.

Beverly A. Crowden, Terrell & Crowden PC, Joseph M. Layman, Attorney at Law, Waco, TX, for Real Party in Interest.

Before Chief Justice GRAY, Justice REYNA, and Justice DAVIS.

## OPINION & ABATEMENT ORDER

TOM GRAY, Chief Justice.

Laura C. appeals a judgment terminating the parent-child relationship between her and her two children, J.J.C. and A.M.C. A jury determined that the parent-child relationship should be terminated based on Texas Family Code Section 161.001(1) and that termination was in the children's best interest.[1] TEX. FAM.CODE ANN. § 161.001 (Vernon 2009). Laura's four complaints on appeal all hinge on the issue of whether the Indian Child Welfare Act of 1978's protections should have been

applied to the termination case. 25 U.S.C.A. §§ 1901–1963 (2001). Because we find that the Department knew that the children were possibly Indian children and the trial court had reason to believe that the children were Indian children also, we abate this cause and remand to the trial court so that proper notice may be sent to the proper individuals, and after proper notice, for a hearing to determine whether J.J.C. and A.M.C. are Indian children as defined in the Indian Child Welfare Act. Upon reinstatement, we will conditionally reverse the judgment if, after notice and a hearing, the trial court finds that they are Indian children, and will remand so that a new trial shall be conducted using the standards and protections required by the ICWA. If, after notice and a hearing, the trial court finds that the children are not Indian children as defined in the ICWA, then upon reinstatement, we will issue a judgment that the trial court's judgment of termination is affirmed because Laura C. does not challenge the findings based on section 161.001.

### Preservation of Error

■ The State contends that Laura has waived this issue in several ways, which we must first address in order to determine whether this issue is properly before us. Laura did not object to the failure to apply the ICWA at the trial court, nor did she object to the charge as containing improper standards of review and incorrect questions regarding the findings necessary for termination of her parental rights. Additionally, Laura did not raise the trial court's failure to apply the ICWA in her statement of points of error on appeal pursuant to Family Code Section 263.405. The issue then becomes whether or not the

---

1. The father of the children, David C., executed affidavits of relinquishment and is not appealing the termination of his parental rights.

ICWA preempts state law in these regards.

### Federal Preemption

■ Federal law preempts state law when: (1) Congress has expressly preempted state law, (2) Congress has installed a comprehensive regulatory scheme in the area, removing the entire field from the state realm, or (3) state law directly conflicts with the force or purpose of federal law. *In re W.D.H.*, 43 S.W.3d 30, 35–36 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (*citing Cardinal Towing & Auto Repair, Inc. v. City of Bedford, Tex.*, 180 F.3d 686, 690 (5th Cir.1999)).

■ Congress has not expressly stated that by enacting the ICWA it was preempting state law concerning child custody proceedings, nor has Congress stated an intention for the ICWA to occupy the area of child custody proceedings completely. *W.D.H.*, 43 S.W.3d at 35–36. Therefore, in order to find federal preemption of the relevant provisions set forth in the Family Code, we must find that they are in conflict with the ICWA. *Id.* There are two types of conflict preemption: (1) it is impossible to comply with both the federal and state law, and (2) the state law stands as an obstacle to the accomplishment and execution of congressional objectives. *W.D.H.*, 43 S.W.3d at 36; *Railroad Comm'n of Tex. v. Lone Star Gas Co.*, 844 S.W.2d 679, 694 (Tex.1992) (*citing Northwest Cent. Pipeline Corp. v. State Corp. Comm'n of Kan.*, 489 U.S. 493, 509, 109 S.Ct. 1262, 103 L.Ed.2d 509 (1989)).

Texas state rules require preservation of error by the complaining party at the trial court in order to raise an issue on appeal and Section 263.405 of the Texas Family Code requires that a statement of points of error on appeal by the parent is necessary in order for the appellate court to consider an issue in a termination case where the Department is involved. However, section 1912 of the ICWA places the burden of determining the issue of whether the ICWA applies on the Department and the trial court, which is in conflict with the state rules regarding preservation of error by the parent. *Compare* 25 U.S.C.S. § 1912 *with* Tex.R. Civ. P. 279 and Tex. R.App. P. 33.1. Additionally, section 1914 of the ICWA regarding post-judgment attacks on involuntary terminations for violations of the notice requirements in ICWA are in conflict with the Family Code requirements of bringing complaints in a statement of points of error on appeal. *Compare* 25 U.S.C.S. § 1914 *with* Tex. Fam.Code Ann. § 263.405(d) & (i) (Vernon 2008). We hold that the provisions of the ICWA allowing post-judgment challenges to involuntary termination proceedings preempt the Texas rules and statutes regarding preservation of error.

Accordingly, we find that the protections enumerated in the ICWA are mandatory as to the trial court and the Department, that they preempt state law, and the failure to follow the ICWA may be raised for the first time on appeal. *See* 25 U.S.C.A. § 1914 (Indian child, parent of child, or tribe may petition any court of competent jurisdiction to set aside involuntary termination for failure to comply with the ICWA).

### Indian Child Welfare Act of 1978

■ Congress passed the Indian Child Welfare Act in response to the "rising concern in the mid–1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 32, 109 S.Ct. 1597, 1599–1600, 104 L.Ed.2d 29

(1989); *see also In re W.D.H.*, 43 S.W.3d at 34. The ICWA applies to all state child custody proceedings involving an Indian child when the court knows or has reason to know an Indian child is involved. 25 U.S.C.A. § 1912(a); *Doty–Jabbaar v. Dallas County Child Protective Servs.*, 19 S.W.3d 870, 874 (Tex.App.-Dallas 2000, pet. denied). And an Indian child is defined by the ICWA as an "unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C.A. § 1903(4). The ICWA, however, does not define what constitutes being a "member" or "being eligible for membership." *See* 25 U.S.C.A. § 1903(4). Each tribe has its own criteria for determining tribe membership. *See In re R.R.*, 294 S.W.3d 213, 217–18 (Tex.App.-Fort Worth 2009, no pet.).

The Bureau of Indian Affairs has created guidelines for state courts to use in Indian child custody proceedings to assist with the interpretation of the ICWA. *See* Bureau of Indian Affairs Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67,584 (Nov. 26, 1979). While these guidelines do not have binding legislative effect, two other courts of appeals have used the Guidelines in interpreting the ICWA. *See In re R.R.*, 294 S.W.3d at 217; *see also Yavapai–Apache Tribe v. Mejia*, 906 S.W.2d 152, 163–64 (Tex.App.-Houston [14th Dist.] 1995, orig. proceeding).

The Guidelines state that "[p]roceedings in state courts involving the custody of Indian children shall follow strict procedures and meet stringent requirements to justify any result in an individual case contrary to these preferences." BIA Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. at 67,-586. The Guidelines further direct that any ambiguities between the ICWA and all regulations, guidelines, and state statutes relating to the ICWA shall be resolved in favor of the result that is most consistent with the ICWA's preferences of keeping Indian children with their families or other Indian families. *Id.*

Specific instructions are provided in the guidelines for the determination of the status of an alleged Indian child. The burden is placed on the trial court to seek verification of the child's status through either the Bureau of Indian affairs or the child's tribe. *Id.* at 67,586 ("the court shall seek verification of the child's status"). Further, the Guidelines provide that "[c]ircumstances under which a state court has reason to believe a child involved in a child custody proceeding is an Indian include ... (i) Any party to the case ... informs the court that the child is an Indian child .... (ii) Any public or state-licensed agency involved in child protection services or family support has discovered information which suggests that the child is an Indian child." *Id.*

The commentary to section B.1. of the Guidelines also indicates that it is the trial court's and the petitioner's burden to make inquiry sufficient to affirmatively determine whether the child is an Indian or not. BIA Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. at 67,586.

■ Therefore, we hold that it is the duty of the trial court and the Department of Family and Protective Services to send notice in any involuntary proceeding "where the court knows or has reason to know that an Indian child is involved." 25 C.F.R. § 23.11 (2008). The requirements of the notice are enumerated in section 23.11, including the name of the Indian child, the child's birthdate and birthplace, the name of the tribe or tribes in which the

child may be eligible for enrollment, "all names known, and current and former addresses of the Indian child's biological mother, biological father, maternal and paternal grandparents and great grandparents ... including maiden, married and former names or aliases; birthdates; places of birth and death; tribal enrollment numbers and/or other identifying information." *Id.* § 23.11(d)(1)-(4).

Section 23.11 also requires that the notice be sent to the "appropriate Area Director" and the Secretary of the Interior. *Id.* § 23.11(a), (b), and (f). Upon receiving the notice, the Secretary of the Interior or his designee is obliged to make reasonable documented efforts to locate and notify the tribe within fifteen days or to notify the trial court how much time is needed to complete the search for the child's tribe. *Id.* § 23.11(f).

***The Notice***

 The case involving A.M.C. was originally filed in Hill County on January 17, 2008 and transferred to McLennan County on June 13, 2008 after the birth and subsequent removal of J.J.C. in McLennan County. It is unclear from the record as to what triggered the Department's inquiry into the status of A.M.C. as an Indian child in Hill County; however, the Department, through one of its attorneys in Austin, sent a notice pursuant to ICWA and filed a copy of it with the trial court in the Hill County case on May 8, 2008. According to the report attached to the notice, the caseworker for the Department prepared her report with the child's information to be sent pursuant to the ICWA on April 7, 2008.

According to the Guidelines, we find that the trial court had reason to believe that A.M.C. and J.J.C. are Indian children because a public or state-licensed agency involved in child protection services or family support, the Department, discover-

ed information that the children's maternal grandmother was alleged to be a member of the Chippewa Indian Nation which suggests that A.M.C. and J.J.C. are Indian children. BIA Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. at 67,586. Once the trial court had reason to believe that A.M.C. and J.J.C. were Indian children, the notice provisions of the ICWA were triggered and are mandatory. *Id.* (providing that when a state court has reason to believe a child involved in a child custody proceeding is an Indian, the court *shall* seek verification of the child's status from either the BIA or the child's tribe (emphasis added)).

The notice sent regarding A.M.C. lists multiple persons and agencies notified of this cause; however, the notice does not contain all of the information required in section 23.11. 25 C.F.R. § 23.11. Some of this information was available to the Department such as the child's birthplace. The mother's maiden name and prior addresses were not included nor was her place of birth. The only ancestral information included was that of Laura' mother, which consisted of her name, date of birth, reported tribe (Chippewa) and membership number. The record is silent as to any response by any tribe, the Area Director, or the Secretary of the Interior. Further, no additional notice was sent regarding a different court date than the one listed nor notification that the cause had been transferred prior to the date listed in the notice for the next hearing.

It is undisputed that there was not a notice sent to any person at any time regarding J.J.C. It is further undisputed that there was no compliance with the other requirements of the ICWA at the trial, such as the requirements of experts in Indian cultural issues or a finding beyond a reasonable doubt at the termination

hearing that the "continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C.S. § 1912(f).

■ The trial court's application of the ICWA is a question of law, which we review de novo. *See In re W.D.H.*, 43 S.W.3d 30, 33 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). A violation of the ICWA notice provisions may be a cause for invalidating the termination proceedings at some future point in time. *See* 25 U.S.C.A. § 1914 (providing that "[a]ny Indian child who is the subject of any action for ... termination of parental rights under State law, any parent ... from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title"); *see also In re W.D.H.*, 43 S.W.3d at 38–39 (recognizing parent of Indian child has standing to challenge adequacy of notice even though tribe declined to join suit).

The State contends that any failures to comply with the ICWA were harmless. However, in light of the explicit language of the ICWA and the Guidelines, we do not find this argument has any merit. We sustain Laura's first issue that the trial court erred in failing to properly notify the tribe as required by the ICWA. Because of our holding regarding the failure to properly send notice as required by the ICWA, we do not address Laura's second, third, and fourth issues.

### The Remedy

■ We agree with the Fort Worth Court of Appeals that the proper remedy in this situation is to remand the case so that proper notice may be provided, and that we will conditionally affirm the termination judgment in the event that it is

determined that A.M.C. and J.J.C. are not Indian children. *See In re R.R., Jr.*, 294 S.W.3d at 227; Tex.R.App. P. 44.4.

Laura attached exhibits to her brief to this Court that included an affidavit from the director of the Indian Child Welfare Office of the White Earth Band of Ojibwe confirming Laura's membership in the tribe and other documentation, which indicate that the children are eligible for membership in the tribe. The State has not objected to those exhibits. However, we believe it is more appropriate for the trial court to determine this issue.

We will abate this appeal and remand this case to the trial court. The trial court will ensure that proper notice that complies with the statutory notice requisites shall be provided. The trial court shall then conduct a hearing to determine whether A.M.C. and J.J.C. are Indian children under the ICWA. *See* Tex.R.App. P. 44.4 (appellate court shall not reverse or affirm judgment if trial court can correct erroneous failure to act, and appellate court authorized to direct trial court to correct erroneous failure to act and to then proceed as if erroneous failure to act had not occurred). We order that the records generated by the hearing in the trial court be supplemented in this Court. After we receive this supplemental record, this appeal will be reinstated. If, after proper notice and a hearing, the trial court has determined that A.M.C. and J.J.C. are not Indian children, then we will issue a judgment affirming the trial court's termination judgment. *See* Tex.R.App. P. 43.2(a). If, after notice and hearing, the trial court determines that A.M.C. and J.J.C. are Indian children, then this court shall issue a judgment reversing the trial court's termination judgment, and the trial court shall conduct a new trial applying the ICWA. *See* Tex.R.App. P. 43.2(d).

### Conclusion

We find that the trial court did have reason to believe that A.M.C. and J.J.C. were Indian children and that the trial court erred in failing to ensure that proper notice was given to the appropriate individuals and agencies. We abate this cause to the trial court as stated above. If, after notice and a hearing, the trial court determines that A.M.C. and J.J.C. are not Indian children, then the termination order will be affirmed. If, after notice and a hearing, the trial court determines that A.M.C. and J.J.C. are Indian children, then the termination judgment of the trial court will be reversed and the trial court must conduct a new trial applying the requirements and standards of the ICWA.