# NO. 12-17-00306-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | *§* | *APPEAL FROM THE 173RD* |
| *B.W. AND C.W.,* | *§* | *JUDICIAL DISTRICT COURT* |
| *CHILDREN* | *§* | *HENDERSON COUNTY, TEXAS* |

## *PER CURIAM ORDER*

J.W. appeals the termination of her parental rights.  We remand the case to the trial court with instructions.

## BACKGROUND

J.W. is the mother and J.P., III is the father of B.W. and C.W.[1]  On August 23, 2016, the Department of Family and Protective Services (the Department) filed an original petition for protection of B.W. and C.W., for conservatorship, and for termination of J.W.'s parental rights. On May 19, 2017, the Department filed a first amended original petition for protection of the children, for conservatorship, and for termination of J.W.'s and J.P., III's parental rights.  The Department was appointed temporary managing conservator of the children, and J.W. was appointed temporary possessory conservator with limited rights, duties, access, and possession.

At the conclusion of the trial on the merits, the trial court found, by clear and convincing evidence, that J.W. had engaged in one or more of the acts or omissions necessary to support

---

[1] The trial court found, by clear and convincing evidence, that, after waiving service of process or being served with citation in this suit, J.P., III did not respond by timely filing an admission of paternity or by filing a counterclaim for paternity or for voluntary paternity to be adjudicated under Chapter 160 of the Texas Family Code before the final hearing in this suit.  *See* TEX. FAM. CODE ANN. § 161.002(b) (West Supp. 2016).  The trial court found that J.P., III, is, and was adjudicated to be, the father of B.W. and C.W., found that termination between J.P., III and the children was in the children's best interest, and ordered that the parent-child relationship, if any existed or could exist, between J.P., III and the children be terminated.  The father is not a party to this appeal.

termination of her parental rights under subsections (D), (E), and (O) of Texas Family Code section 161.001(b)(1). The trial court also found that J.W. had a mental or emotional illness or a mental deficiency that rendered her unable to provide for the physical, emotional, and mental needs of the children under subsection (a) of Texas Family Code section 161.003. Finally, the trial court found that termination of the parent-child relationship between J.W., B.W., and C.W. is in the children's best interest. Based on these findings, the trial court ordered that the parent-child relationship between J.W., B.W., and C.W. be terminated. J.W. filed a notice of appeal.

## INDIAN CHILD WELFARE ACT

In our review of the record, we observed that on September 2, 2016, the Department filed a notice to the Bureau of Indian Affairs, notifying the BIA of an involuntary child custody proceeding regarding B.W. and C.W. Further, the Department requested that the BIA determine the children's status under the Indian Child Welfare Act. In a status report from the Department to the trial court dated October 12, 2016, the "box" indicating each child's Native American status was checked. The report explained that each "Child's possible American Indian child status reported by [J.W.], Mother, and is yet to be determined." The permanency plan and progress reports to the trial court dated February 6, 2017, May 8, 2017, and August 8, 2017 repeated the language quoted above. Moreover, the first and second amended original petitions stated that both children were "[r]eported as an Indian child by a parent or other person." The record does not show that the children's Native American status was determined prior to trial, and the order of termination makes no reference to the issue.

Congress passed the Indian Child Welfare Act (ICWA) in response to the "rising concern in the mid–1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 32, 109 S.Ct. 1597, 1599–1600, 104 L. Ed. 2d 29 (1989); *see also In re W.D.H.*, 43 S.W.3d 30, 34 (Tex. App—Houston [14th Dist.] 2001, pet. denied). The ICWA applies to all state child custody proceedings involving an Indian child when the court knows or has reason to know an Indian child is involved. 25 U.S.C.A. § 1912(a) (Westlaw current through PL 115-68); *In re R.R.*, 294 S.W.3d 213, 217 (Tex. App.—Fort Worth 2009, no pet.). "Child custody proceeding" means, and

2

includes, foster care placement, termination of parental rights, preadoptive placement, and adoptive placement. 25 U.S.C.A. § 1903(1) (Westlaw current through PL 115-68). An Indian child is defined by the ICWA as an "unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C.A. § 1903(4) (Westlaw current through PL 115-68). The ICWA, however, does not define what constitutes being a "member" or "being eligible for membership." *See* 25 U.S.C.A. § 1903(4). Each tribe has its own criteria for determining tribe membership. *See In re R.R.*, 294 S.W.3d at 217-18.

The Bureau of Indian Affairs created guidelines for state courts to use in Indian child custody proceedings to assist with the interpretation of the ICWA. *See* BUREAU OF INDIAN AFFAIRS GUIDELINES FOR STATE COURTS; INDIAN CHILD CUSTODY PROCEEDINGS, 44 FED. REG. 67,584 (Nov. 26, 1979). The Guidelines state that "[p]roceedings in state courts involving the custody of Indian children shall follow strict procedures and meet stringent requirements to justify any result in an individual case contrary to these preferences." BIA GUIDELINES, 44 FED. REG. at 67,586. Specific instructions are provided in the Guidelines for the determination of the status of an alleged Indian child. *See In re J.J.C.*, 302 S.W.3d 896, 900 (Tex. App.—Waco 2009, no pet.). The burden is placed on the trial court to seek verification of the child's status through either the Bureau of Indian Affairs or the child's tribe. BIA GUIDELINES, 44 FED. REG. at 67,586 (stating that "the court shall seek verification of the child's status"). Further, the Guidelines provide that "[c]ircumstances under which a state court has reason to believe a child involved in a child custody proceeding is an Indian include [when] . . . (i) Any party to the case . . . informs the court that the child is an Indian child . . . . (ii) Any public or state-licensed agency involved in child protection services or family support has discovered information which suggests that the child is an Indian child." *Id*.

Under the ICWA, an Indian tribe is entitled to notice of a custody proceeding involving an Indian child. *See* 25 U.S.C.A. § 1912(a). It is the duty of the trial court and the Department to send notice in any involuntary proceeding "where the court knows or has reason to know that an Indian child is involved." 25 C.F.R. § 23.11 (Westlaw current through Oct. 19, 2017 issue). Section 23.11 also requires that the notice be sent to the "appropriate Regional Director" and the Secretary of the Interior. *Id*. § 23.11(a), (b), (c). Upon receiving the notice, the Secretary of the Interior is obliged to make reasonable documented efforts to locate and notify the tribe and the

child's parent or Indian custodians within fifteen days or to notify the trial court how much time is needed to complete the search for the child's tribe. *Id*. § 23.11(c).

A violation of the ICWA notice provisions may be cause for invalidation of the termination proceedings at some later, distant point in time. *See* 25 U.S.C.A. § 1914 (Westlaw current through PL 115-68) (providing that "[a]ny Indian child who is the subject of any action for . . . termination of parental rights under State law, any parent . . . from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title"); *see also **In re W.D.H.***, 43 S.W.3d 30, 38-9 (Tex. App.— Houston [14th Dist.] 2001, pet. denied) (recognizing parent of Indian child has standing to challenge adequacy of notice even though tribe declined to join suit). Consequently, because a termination proceeding could result ultimately in adoption, strict compliance with the notice provisions of the ICWA and the regulations implementing it in the Code of Federal Regulations is especially important, or "the State could offer prospective adoptive parents no assurance this termination and a subsequent adoption would not be invalidated." *See **In re J.W.***, 498 N.W.2d 417, 419-22 (Iowa Ct. App. 1993) (*disapproved on other grounds by **In re N.N.E.***, 752 N.E.2d 1 (Iowa 2008)) (recognizing that notice provisions of the ICWA are to be strictly construed and reversing order terminating parental rights because of inadequate notice and remanding for new hearing after proper notice).

As noted above, on September 2, 2016, the Department filed a notice to the BIA, notifying them of an involuntary child custody proceeding regarding B.W. and C.W. Further, the Department requested that the BIA determine the children's status under the ICWA. In a status report and permanency plan and progress reports from the Department to the trial court dated October 12, 2016, February 6, 2017, May 8, 2017, and August 8, 2017, the "box" indicating each child's Native American status was checked. The reports explained that each "Child's possible American Indian child status reported by [J.W.], Mother, and is yet to be determined." Moreover, the first and second amended original petitions stated that both children were "[r]eported as an Indian child by a parent or other person."

This was information discovered by a state licensed agency involved in child protection services that suggested B.W. and C.W. may be Indian children, and it was sufficient to trigger the ICWA's requirements for notification and determination of Indian status. *See **In re J.J.C.***,

302 S.W.3d at 901 (holding that the trial court had reason to believe that the children were Indian because DFPS discovered that their maternal grandmother was alleged to be a member of the Chippewa Indian Nation); *In re R.R.*, 294 S.W.3d at 222 (holding that the trial court had reason to believe the children were Indian when mother testified that her grandmother was a registered member of the Kiowa Indian Nation). Therefore, the trial court was obligated to notify the Indian tribe or tribes for an inquiry into the children's Indian status. *See In re R.R.*, 294 S.W.3d at 219 (noting that the Guidelines listed circumstances "shall trigger an inquiry by the court and petitioners"). The notice provisions of the ICWA are mandatory. *See* BIA GUIDELINES, 44 FED. REG. at 67,586 (providing that when a state court has reason to believe a child involved in a child custody proceeding is an Indian, the court shall seek verification of the child's status from either the BIA or the child's tribe). Here, the trial court provided proper notice that complied with the statutory notice requisites of the ICWA. However, there is no record that the Secretary of the Interior made reasonable documented efforts to locate and notify the children's tribe, parents, or Indian custodians; that the Secretary notified the trial court of the results of its efforts to locate the children's tribe; or that the trial court conducted a hearing to determine whether B.W. and C.W. were Indian children under the ICWA. *See* 25 C.F.R. § 23.11(c); BIA GUIDELINES, 44 FED. REG. at 67,586.

Because the inquiry required by ICWA is necessary here, we ***remand*** this case to the trial court. We note that the trial court provided notice to the BIA that complied with the statutory notice requisites. *See* 25 U.S.C.A. § 1912(a).

Accordingly,

It is ORDERED that the 173rd District Court of Henderson County, Texas, shall (1) within **forty-five (45)** days, conduct a hearing to determine whether B.W. and C.W. are Indian children under the ICWA; and (2) cause a record of the proceedings to be prepared and make appropriate findings as to whether B.W. and C.W. are Indian children.

It is FURTHER ORDERED that a supplemental clerk's record, including any order and findings resulting from the ICWA hearing, be certified to this Court within **fifteen (15) days** of the ICWA hearing. The supplemental clerk's record shall also include findings that the Secretary of the Interior made reasonable documented efforts to locate and notify the children's tribe, Indian parents, or Indian custodians, and notified the trial court of the results of its efforts.

It is FURTHER ORDERED that all appellate deadlines mandated by the Texas Rules of Appellate Procedure remain in full force and effect.

WITNESS the Honorable James T. Worthen, Chief Justice, Court of Appeals, 12th Court of Appeals District, Tyler, Texas.

5

GIVEN UNDER MY HAND AND SEAL OF OFFICE at Tyler, Texas this 25th day of October, 2017 A.D.



Respectfully yours,
PAM ESTES,
CLERK

By: _____
Katrina McClenny, Chief Deputy Clerk