# NO. 12-21-00175-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF D.C.B.,* | § | *APPEAL FROM THE 349TH* |
| | § | *JUDICIAL DISTRICT COURT* |
| *A CHILD* | § | *HOUSTON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

C.J.H. appeals the termination of her parental rights. In one issue, she argues that the trial court erred in failing to comply with the Indian Child Welfare Act (ICWA). We affirm.

## BACKGROUND

C.J.H. is the mother and L.A.B., Jr.[1] is the father of D.C.B. On November 12, 2019, the Department of Family and Protective Services (the Department) filed an original petition for protection of D.C.B., for conservatorship, and for termination of C.J.H.'s and L.A.B., Jr.'s parental rights. The Department was appointed temporary managing conservator of the child, and C.J.H. and L.A.B., Jr. were allowed limited access to and possession of the child.

At the conclusion of a jury trial on the merits, the trial court found, by clear and convincing evidence, that C.J.H. engaged in one or more of the acts or omissions necessary to support termination of her parental rights under subsections (D), (E), (N), (O), and (P) of Texas Family Code Section 161.001(b)(1). The trial court also found that termination of the parent-child relationship between C.J.H. and D.C.B. is in the child's best interest. Based on these

---

[1] On February 25, 2020, L.A.B., Jr. was adjudicated as the father of D.C.B., and a parent-child relationship was established between L.A.B., Jr. and D.C.B. On April 19, 2021, L.A.B., Jr. signed an affidavit of voluntary relinquishment of parental rights to D.C.B. Consequently, the trial court found, by clear and convincing evidence, that L.A.B., Jr. executed before or after the suit was filed an unrevoked or irrevocable affidavit of relinquishment to D.C.B. and found that termination of the parent-child relationship between L.A.B., Jr. and D.C.B. was in the child's best interest. The trial court ordered that the parent-child relationship between L.A.B., Jr. and D.C.B. be terminated. L.A.B., Jr. is not a party to this appeal.

findings, the trial court ordered that the parent-child relationship between C.J.H. and D.C.B. be terminated. This appeal followed.

**INDIAN CHILD WELFARE ACT**

In her sole issue, C.J.H. argues the trial court erred by failing to comply with the requirements of the ICWA. Specifically, she contends that the Department failed to send notices to the appropriate regional directors and the Secretary of the Interior, notify the Cherokee Nation, and determine whether D.C.B. is an Indian child under the ICWA.

**Applicable Law**

Congress passed the ICWA[2] in response to the "rising concern in the mid–1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 32, 109 S. Ct. 1597, 1599–1600, 104 L. Ed. 2d 29 (1989); *see also* *In re W.D.H.*, 43 S.W.3d 30, 34 (Tex. App—Houston [14th Dist.] 2001, pet. denied). The ICWA applies to all state child custody proceedings involving an Indian child when the court knows or has reason to know an Indian child is involved. 25 U.S.C.A. § 1912(a) (Westlaw current through PL 117-80); *In re R.R., Jr.*, 294 S.W.3d 213, 217 (Tex. App.—Fort Worth 2009, no pet.). "Child custody proceeding" means, and includes, foster care placement, termination of parental rights, preadoptive placement, and adoptive placement. 25 U.S.C.A. § 1903(1) (Westlaw current through PL 117-80). "Foster care placement" means any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated. *Id.* § 1903(1)(i). An Indian child is defined by the ICWA as an "unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." *Id.*

---

[2] In *Brackeen v. Bernhardt*, 937 F.3d 406 (5th Cir. 2019), the Fifth Circuit reversed the federal district court's ruling that declared provisions of ICWA and the 2016 administrative rule implementing it unconstitutional. *Id.* at 416. The Fifth Circuit found that ICWA was constitutional and, therefore, the 2016 administrative rule implementing ICWA was valid. *Id.* at 441. On November 7, 2019, the Fifth Circuit granted rehearing en banc. *See Brackeen v. Bernhardt*, 942 F.3d 287 (5th Cir. 2019).

§ 1903(4). The ICWA, however, does not define what constitutes being a "member" or "being eligible for membership." *See id.* § 1903(4). Each tribe has its own criteria for determining tribe membership. *See **In re R.R., Jr.**,* 294 S.W.3d at 217-18.

The Bureau of Indian Affairs created guidelines for state courts to use in Indian child welfare proceedings implementing the ICWA. *See* BUREAU OF INDIAN AFFAIRS GUIDELINES FOR STATE COURTS AND AGENCIES IN INDIAN CHILD CUSTODY PROCEEDINGS, 80 FED. REG. 10146-02 (Feb. 25, 2015). Specific instructions are provided in the Guidelines for the determination of the status of an alleged Indian child. *See **In re J.J.C.**,* 302 S.W.3d 896, 900 (Tex. App.—Waco 2009, no pet.). "State courts, in every child custody proceeding, must ask whether the child is or could be an Indian child and conduct an investigation into whether the child is an Indian child." BIA GUIDELINES, 80 FED. REG. at 10152. Further, the Guidelines provide that "[a]n agency or court has reason to believe a child involved in a child custody proceeding is an Indian child if: (1) Any party to the proceeding ... informs the agency or court that the child is an Indian child [or] (2) Any agency involved in child protection services or family support has discovered information suggesting that the child is an Indian child." *Id.*

Under the ICWA, an Indian tribe is entitled to notice of a custody proceeding involving an Indian child. *See* 25 U.S.C.A. § 1912(a). It is the duty of the trial court and the Department to send notice in any involuntary proceeding "where the court knows or has reason to know that an Indian child is involved." 25 C.F.R. § 23.11 (Westlaw current through Feb. 3, 2022 issue). Section 23.11 also requires that the notice be sent to the "appropriate Regional Director" and the Secretary of the Interior. *Id.* § 23.11(a), (b), (c). Upon receiving the notice, the Secretary of the Interior is obliged to make reasonable documented efforts to locate and notify the tribe and the child's Indian parent or custodians within fifteen days or to notify the trial court how much time is needed to complete the search for the child's tribe. *Id.* § 23.11(c). A violation of the ICWA notice provisions may be cause for invalidation of custody or termination proceedings at some later, distant point in time. *See* 25 U.S.C.A. § 1914 (Westlaw current through PL 117-80) (providing that "[a]ny Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent ... from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title"); *see also **In re W.D.H.**,* 43 S.W.3d at 38-9 (recognizing parent of

Indian child has standing to challenge adequacy of notice even though tribe declined to join suit).

**Analysis**

In the current case, on February 10, 2020, in the permanency report to the trial court, the Department stated that D.C.B.'s "possible American Indian child status [was] reported by [L.A.B., Jr.] and [C.J.H.], and is yet to be determined." This was information discovered by a state licensed agency involved in child protection services that suggested D.C.B. may be an Indian child, and it was sufficient to trigger the ICWA's requirements for notification and determination of Indian status. *See In re J.J.C.*, 302 S.W.3d at 901 (holding that the trial court had reason to believe that children were Indian because DFPS discovered that their maternal grandmother was alleged to be a member of the Chippewa Indian Nation); *In re R.R.*, *Jr.*, 294 S.W.3d at 222-26 (holding that the trial court had reason to believe the children were Indian when mother testified that her grandmother was a registered member of the Kiowa Indian Nation). Therefore, the trial court was obligated to notify the Indian tribe or tribes for an inquiry into the child's Indian status. *See In re R.R.*, *Jr.*, 294 S.W.3d at 219 (noting that the Guidelines' listed circumstances "shall trigger an inquiry by the court and petitioners"). The notice provisions of the ICWA are mandatory. *See* BIA GUIDELINES, 80 FED. REG. at 10151-10154 (providing that when a state court has reason to believe a child involved in a child custody proceeding is an Indian, the court shall seek verification of the child's status from either the BIA or the child's tribe).

In this case, on March 4, 2020, the Department sent a notice to the Bureau of Indian Affairs that an involuntary child custody proceeding was pending regarding D.C.B. Along with the pertinent family tree and genogram information, the ICWA notice was also sent certified mail, return receipt requested to the following: Secretary of the Interior, ICWA; Eastern Oklahoma Regional Director; Eastern Regional Director; Southwest Regional Director; Southern Plains Regional Director; Mescalero Apache; Jicarilla Apache Nation; Apache Tribe of Oklahoma; Cherokee Nation of Oklahoma; Eastern Band of Cherokee Indians; United Keetoowah Band of Cherokee Indians; Mississippi Band of Choctaw Indians; and The Choctaw Nation of Oklahoma. In summary, the Department sent the ICWA notice to the BIA, the Secretary of the Interior, four regional directors, and eight tribes or nations. *See* 25 C.F.R. § 23.11.

Between March and September 2020, the Mississippi Band of Choctaw Indians and the

4

Jicarillo Apache Nation determined that D.C.B. was not eligible for enrollment with the tribe, and the Cherokee Nation of Oklahoma determined that D.C.B. was not an "Indian child" in relation to the Cherokee Nation. During the jury trial, C.J.H. testified that she has Native American history, specifically Cherokee and Choctaw. However, the next day, she testified that she is not a member of any Native American tribe because she did not have enough "native blood" to be a member. Nor is she or her parents registered with any Native American tribe. She believed she told the Department that there was Native American blood on "both parts," possibly meaning herself and D.C.B.'s father. She could not recall telling, or did not believe that she told, the California child welfare workers that she did not have any Native American history. Ashley Hardin, a conservatorship specialist with the Department, testified that during the initial adversary hearing, C.J.H. said nothing to her or the trial court about having Native American heritage. However, Hardin stated that C.J.H. later claimed Native American heritage.

On November 9, 2021, the trial court found that proper notice was sent to the tribes identified by the parents pursuant to 25 U.S.C.A. § 1912 and 25 C.F.R. § 23.11. Further, the evidence showed that the child, D.C.B., was not eligible for membership in those tribes. The trial court found that the child, D.C.B., is not an Indian child within the meaning of 25 U.S.C.A. § 1903. Because the Department sent proper notices regarding the child custody proceeding regarding D.C.B. to the BIA, Secretary of the Interior, regional directors, and appropriate tribes or nations, and the trial court found that D.C.B. was not an Indian child, the trial court complied with the ICWA requirements. Accordingly, we overrule C.J.H.'s sole issue.[3]

## DISPOSITION

Having overruled C.J.H.'s sole issue, we *affirm* the judgment of the trial court.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered February 9, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

---

[3] We note that C.J.H. does not dispute the termination of her parental rights to D.C.B.



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**FEBRUARY 9, 2022**

**NO. 12-21-00175-CV**

**IN THE INTEREST OF D.C.B., A CHILD**

Appeal from the 349th District Court
of Houston County, Texas (Tr.Ct.No. 19-0190)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*