# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00720-CV

---

**M. Y. and D. Y., Appellants**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

### FROM THE 395TH DISTRICT COURT OF WILLIAMSON COUNTY
### NO. 20-0090-CPS395, THE HONORABLE RYAN D. LARSON, JUDGE PRESIDING

---

## O P I N I O N

This parental rights termination case involves the Indian Child Welfare Act (ICWA). M.Y. (Mother) and D.Y. (Father) appeal from the trial court's decree terminating their parental rights to Meg and Matt (the Children), who were three years old and two years old, respectively, at the start of trial.[1] *See* Tex. Fam. Code § 161.001(b). Mother and Father raise several challenges on appeal, including that the trial court failed to provide notice to the relevant tribal nations and that the trial court made its findings using the wrong standard. We will reverse the judgment of the trial court and remand for further proceedings.

---

[1] For the children's privacy, we refer to them by an alias and their family members by their relationships to the children. *See* Tex. R. App. P. 9.8; *see also* Tex. Fam. Code § 109.002(d).

## BACKGROUND

Due to the sensitive nature of the facts in child welfare cases and the parties' familiarity with the facts, the court will limit its discussion to those facts necessary for the controlling ICWA issues on appeal.

The bench trial took place over three days spanning from July to October 2022. On the first day of trial on July 22, 2022, Mother testified that she has Indian heritage through two tribal nations: Cherokee and Blackfoot. She further testified that she is not a registered member of a tribe, but her grandmother was a registered member of the Cherokee tribe out of Oklahoma. She was uncertain whether her grandmother was registered with the Blackfoot tribe. Mother asserted that, to her knowledge, the children are not registered members of either tribe. The trial was soon thereafter adjourned, but due to scheduling conflicts, the second and third day of trial were not held until October 18 and 19, 2022. There is no evidence in the record, however, that any notices were sent to the identified tribal nations pursuant to the ICWA at any point during the underlying proceeding, including the three-month interim. At the end of the bench trial, the trial court terminated Mother's and Father's parental rights to the Children based on the application of a clear and convincing evidence standard.

Both parents appealed the termination order. Mother raises three issues on appeal, including that the trial court erred by terminating her parental rights without first providing notice to the tribal nations after the court was put on notice that the Children may be Indian children, without definitively determining whether the Children qualified for tribal membership, and without following the procedures and standards required by the ICWA. Father raises two issues on appeal, which include challenging that the trial court erred by not following the notice provisions of the ICWA.

2

**STANDARD OF REVIEW**

Although not raised before the trial court, the trial court's failure to follow the ICWA "may be raised for the first time on appeal." *In re J.J.C.*, 302 S.W.3d 896, 899 (Tex. App.—Waco 2009, no pet.) (citing 25 U.S.C. § 1914). The trial court's application of the ICWA is a question of law, which we review de novo. *Id.* at 902. When the record is inconclusive as to whether a child qualifies as an Indian child under the ICWA, a trial court must treat the child as an Indian child "unless and until it is determined on the record that the child does not meet the definition." *In re S.J.H.*, 594 S.W.3d 682, 688 (Tex. App.—El Paso 2019, no pet.) (quoting 25 C.F.R. § 23.107(b)). The trial court must also confirm that the agency or other party used due diligence to, among other things, verify whether the child is in fact a member of the identified tribes. *Id.* (citing 25 C.F.R. § 23.107(b)). Further, in the trial court, the ICWA resets the standard of proof in termination cases from clear and convincing evidence to beyond a reasonable doubt. 25 U.S.C. § 1912(f)[2]; *see also In re V.L.R.*, 507 S.W.3d 788, 795 (Tex. App.—El Paso 2015, no pet.) (agreeing that beyond reasonable doubt standard applicable in criminal and juvenile delinquency proceedings applies in ICWA termination proceedings); *In re K.S.*, 448 S.W.3d 521, 539 (Tex. App.—Tyler 2014, pet. denied) (reaching similar conclusion).

**DISCUSSION**

The ICWA is a federal law that applies in state court termination cases when a court knows or has reason to know that an Indian child is involved in a child custody

---

[2] "No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(f).

proceeding. 25 U.S.C. § 1912(f); *In re S.J.H.*, 594 S.W.3d at 687; *In re V.L.R.*, 507 S.W.3d at 792. Congress enacted the ICWA in 1978 in response to a rising concern over the consequences to Indian tribes, Indian families, and the children subjected to abusive child welfare practices that resulted in the separation of Indian children from their families and tribes.[3] *In re V.L.R.*, 507 S.W.3d at 792 (citing *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 32 (1989)). The Act is based on a policy that, when possible, an Indian child should remain in the Indian community. *See Mississippi Band of Choctaw Indians*, 490 U.S. at 36; *In re V.L.R.,* 507 S.W.3d at 792.

Under ICWA, an Indian child is defined as any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. 25 U.S.C. § 1903(4). An Indian tribe for ICWA purposes means any Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary of the Interior because of their status as Indians. *Id.* § 1903(8). The ICWA does not

---

[3] The forcible separation of Indian children from their families, their tribes, and their culture was not limited only to a few isolated states in the 1960s and 1970s. *See Brackeen v. Haaland*, 994 F.3d 249, 284–85 (5th Cir. 2021) (en banc), *cert. granted sub nom.*, *Nation v. Brackeen*, 142 S. Ct. 1204 (2022) (relating testimony before Congress that "many state and county social service agencies and workers, with the approval and backing of many state courts and some federal B[IA] officials, had engaged in the systematic, automatic, and across-the-board removal of Indian children from Indian families and into non-Indian families and communities" (quoting Matthew L.M. Fletcher, *Principles of Federal Indian Law* § 5.2 (1st ed. 2017)); *see also id.* at 455 (Costa, J., dissenting in part and concurring in part) ("When Congress enacted ICWA, it declared the removal of Indian children from their homes by state officials 'the most tragic and destructive aspect of American Indian life today.'" (quoting H.R. Rep. No. 95-1386, at 9 (1978)). Paternalistic attempts to "civilize" and "Christianize" native persons have occurred throughout the history of the United States; as just another example, in the nineteenth century Indian children were forcibly removed from tribal lands and enrolled in coercive, off-reservation "boarding" schools that "sought to stamp out all vestiges of Indian culture." *See Brackeen*, 994 F.3d at 281–82.

establish which persons are members of a tribe or eligible for membership in a tribe; that determination lies solely with the tribe itself based on the tribe's internal laws and criteria. *In re S.J.H.*, 594 S.W.3d at 687; *In re J.C.C.*, 302 S.W.3d at 900.

The ICWA requires that the Department notify relevant tribal authorities when it seeks to terminate the parental rights to a known or suspected Indian child:

> In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary [of the Interior] in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary: *Provided*, That the parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding.

25 U.S.C. § 1912(a). The ICWA, including its notice requirements, applies to all parental rights termination proceedings involving a known or suspected Indian child, even when the parental rights to be terminated are those of a non-Indian parent. *In re S.J.H.*, 594 S.W.3d at 688; *see K.N. v. State*, 856 P.2d 468, 474 n.8 (Alaska 1993).[4]

---

[4] An en banc majority of the Fifth Circuit held that some challenged ICWA provisions are invalid but concluded that a party's right to intervene, and the higher standard of proof, validly preempted state law. *See Brackeen*, 994 F.3d at 268–69. To intervene in a termination suit, one must have notice that the suit is proceeding. *Id.* at 267; *see also* 25 U.S.C. §§ 1912(a)(notice), 1911(c) (intervention). Texas courts have indicated that the notice provisions of the ICWA must be followed, even post-*Brackeen*. *See, e.g.*, *In re D.C.B.*, No. 12-21-00175-CV, 2022 WL 399141, at *1 (Tex. App.—Tyler Feb. 9, 2022, no pet.) (mem. op.).

The ICWA's implementing regulations provide further guidance with respect to the evidentiary standards used in determining whether a child is an Indian child for purposes of the statute when the record is inconclusive. Specifically, the regulations direct state courts having reason to believe a child is an Indian child to presume the child is an Indian child until proven otherwise:

> (b) If there is reason to know the child is an Indian child, but the court does not have sufficient evidence to determine that the child is or is not an 'Indian child,' the court must:

>> (1) Confirm, by way of a report, declaration, or testimony included in the record that the agency or other party used due diligence to identify and work with all of the Tribes of which there is reason to know the child may be a member (or eligible for membership), to verify whether the child is in fact a member (or a biological parent is a member and the child is eligible for membership); and

>> (2) Treat the child as an Indian child, unless and until it is determined on the record that the child does not meet the definition of an 'Indian child' in this part.

25 C.F.R. § 23.107.[5]

---

[5] The presumption does not necessarily apply in perpetuity absent a response from tribal authorities. Comments to the federal regulations state, for example, that "[i]f a Tribe fails to respond to multiple repeated requests for verification regarding whether a child is in fact a citizen (or a biological parent is a citizen and the child is eligible for citizenship), and the agency has repeatedly sought the assistance of BIA in contacting the Tribe, a court may make a determination regarding whether the child is an Indian child for purposes of the child-custody proceeding based on the information it has available." 81 Fed. Reg. 28788-01, 38806. But that discretion to make the determination that the Indian child presumption no longer applies presupposes some sort of attempt to contact tribal authorities in the first place. In this case, no notification to tribal authorities was given.

As is relevant to this appeal, the ICWA requires the Department to notify relevant tribal authorities when it seeks to terminate parental rights in the case of a known or suspected Indian child. The Department has conceded that no ICWA notices were ever sent to the Cherokee and Blackfoot tribal authorities. Mother stated that she has Indian heritage from these two tribal nations and that she has a grandmother who is registered with the Cherokee tribe. Mother's testimony triggers the presumption under the ICWA's implementing regulations that the Children are Indian children, meaning that the ICWA and its procedures apply to the termination proceedings against Mother and Father, the non-Indian parent. *In re S.J.H.*, 594 S.W.3d at 688. This presumption holds unless and until it is shown that the Children are *not* Indian children. 25 C.F.R. § 23.107(b)(2).[6]

The failure to contact Cherokee and Blackfoot representatives results in two substantive errors in this case. First, on the record before us, the Children are presumptively considered to be Indian children per the ICWA and its corresponding federal regulations pending tribal notification and a tribal citizenship decision from Cherokee and Blackfoot authorities. That is, the ICWA, its procedures, and its heightened beyond-a-reasonable-doubt burden of proof apply in this case. The trial court therefore erred by applying the clear and convincing evidence standard to the termination of Mother's and Father's parental rights. *See* 25 U.S.C. § 1912(f) (requiring evidence beyond reasonable doubt to terminate parental rights as to Indian child).

Second, the failure to contact Cherokee and Blackfoot officials despite Mother's claims of Native American heritage constitutes a second reversible error. *See id.* § 1912(a)

---

[6] The trial court may rely on facts or documentation indicating a tribal determination of membership or eligibility for membership in making a judicial determination as to whether the child is an "Indian child." An example of documentation indicating membership is a document issued by the tribe, such as tribal enrollment documentation. 25 C.F.R. § 23.108.

7

(requiring party seeking termination to notify Indian child's tribe). ICWA procedures require notification to Cherokee and Blackfoot officials so that the tribes may send representative(s) to participate and possibly argue for an ICWA custody placement for the Children if the children are Indian children as determined by the tribes. Based on the existence of these two substantive errors, we reverse the termination decision. *See id.* § 1914 (authorizing courts to invalidate termination of parental rights if ICWA provisions not met).

We sustain Mother's third issue on appeal and Father's first issue on appeal.[7] Because reversal is required here under the ICWA, the only question remaining is the remedy this Court will order because of these errors.

The Department urges us to render a conditional merits decision despite the existence of these two reversible errors, pointing us to several decisions in which our sister courts, acting under similar circumstances, (1) abated the termination appeals, (2) remanded cases to the trial court so that proper notice could be provided to tribal authorities and the trial court could determine whether the subject children were Indian children, and (3) conditionally affirmed the termination order in the event that the trial court concluded that the subject children were not Indian children. *See, e.g.*, *In re J.C.C.*, 302 S.W.3d at 902; *In re R.R., Jr.*, 294 S.W.3d 213, 226–27 (Tex. App.—Fort Worth 2009, no pet.).

These cases rely on Rule 44 of the Texas Rules of Appellate Procedure for the authority to abate and conditionally affirm termination orders pending a decision on Indian child

---

[7] Since we resolve this appeal on those issues, we do not address Mother's first and second issues (asserting that the evidence was legally and factually insufficient to support the best interest finding and that the trial court abused its discretion by not appointing Mother the possessory conservator) or Father's second issue (asserting that the evidence was legally insufficient for termination). Tex. R. App. P. 47.1.

status in the trial court. Rule 44.4 allows an appellate court to direct a trial court to correct an error that prevents the proper presentation of a case to the court of appeals. *See* Tex. R. App. P. 44.4(b). However, we agree with our sister court in El Paso that the better course of action is reversal and remand. *In re S.J.H.*, 594 S.W.3d at 693.

First, we agree that the failure to notify the Cherokee and Blackfoot authorities is not the type of perfunctory issue that can be cured by application of Rule 44.4.[8] *See In re S.J.H.*, 594 S.W.3d at 691. Furthermore, issuing a "conditional" judgment affirming the trial court creates an implicit presumption that the child is *not* an Indian child by treating the failure to contact tribal authorities as a simple procedural error standing in the way of an inevitable affirmance; such a presumption is directly contrary to the requirements of the ICWA to presume that the subject child *is* an Indian child until proven otherwise. *See id.* at 688; 25 C.F.R. § 23.107(b).

Second, it would be advisory for us to opine on whether the order terminating Mother's and Father's parental rights is supported by legally and factually sufficient evidence under the clear and convincing evidence standard. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) (explaining that separations of powers prohibits courts "from issuing advisory opinions"). We cannot know what effect future proceedings on remand

---

[8] It is unclear how Rule 44.4, which gives courts of appeals the authority to direct the trial court to correct a procedural error that prevents the proper presentation of a case on appeal, allows a court of appeals to issue a "conditional" judgment in conjunction with a directive to correct an error. *Compare* Tex. R. App. P. 44.4, *with id.* R. 46.3 (allowing appellate court to suggest remittitur in civil cases and then issue judgment either reforming or reversing damages award based on actions of litigant). Rule 43.2, which delineates the types of judgments a court of appeals may render, does not mention any general authority to issue "conditional" judgments. *Id.* R. 43.2. This discrepancy and lack of textual certainty in the rules cautions against using the rules to fashion such a remedy.

will have on the record—including but not limited to what new evidence may be admitted as part of the ICWA procedures—and how the circumstances of the Children and parents may have changed since the termination order was signed. *See S.P. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-17-000698-CV, 2018 WL 1220895, at \*5 (Tex. App.—Austin Mar. 9, 2018, no pet.) (mem. op.) (remanding ICWA case for full consideration of evidence); *see also Nestle USA, Inc. v. Doe*, 141 S. Ct. 1931, 1951 (2021) (Alito, J, dissenting) ("A decision begins to take on the flavor of an advisory opinion when it is necessary to make so many important assumptions in order to reach the question that is actually resolved."). Likewise, it would be advisory for us to opine on whether the evidence would be sufficient to support termination under the higher beyond a reasonable doubt standard required by the ICWA because the trial court never actually made a determination using that standard. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998) (stating that "hypothetical judgment . . . comes to the same thing as an advisory opinion").

Finally, this case involves more than just the termination of the parents' rights. It involves a potential post-termination adoption, implicating core ICWA concerns. *See In re D.D.*, No. 12-15-00192-CV, 2016 WL 1082477, at \*7 (Tex. App.—Tyler Feb. 29, 2016, no pet.) (mem. op.) (requiring strict compliance with ICWA in adoption situations because ICWA permits adoption to later be invalidated if procedures were not followed). If the trial court confirms that the Children are Indian children, the future placement hearings in this case may be expanded to potentially involve Cherokee and/or Blackfoot authorities. The trial court is better situated to handle the issues that will arise once a final determination about the children's status as Indian or non-Indian is finally resolved pursuant to the proper ICWA procedures. *See* Tex. R. App. P. 43.3 (authorizing appellate courts to remand, not rendition, when further proceedings are

necessary); *see also S.P.*, 2018 WL 1220895, at *5 (concluding that remand was appropriate because in parental rights termination cases "appellate courts are not in a position to determine whether simply to deny the petition for termination or render some other order in the best interest of the child" (quoting *Van Heerden v. Van Heerden*, 321 S.W.3d 869, 874–75 (Tex. App.– Houston [14th Dist.] 2010, no pet.) (quotation marks omitted)).

Based on the record before us, the ICWA applies in this case. The ICWA continues to apply unless and until notification is given to Cherokee and Blackfoot officials and either Cherokee and Blackfoot officials confirm or deny that the Children are Indian children or attempts to contact tribal authorities are unsuccessful, a final citizenship determination from relevant authorities is not forthcoming, and the trial court thereafter uses its discretion to determine Indian child status. But so long as the ICWA presumptively applies, the trial court must use the beyond a reasonable doubt standard necessary for termination of the parental rights to a presumptive Indian child.

The failure to contact the relevant Indian officials to ascertain the children's potential Indian child status and the failure to use the beyond a reasonable doubt standard were both reversible errors. Because these errors are not perfunctory errors that can be easily corrected by abating and directing the trial court to remedy the errors, remand for further proceedings in the trial court is required.

11

## CONCLUSION

We reverse the judgment of the trial court as to both parents and remand for further proceedings consistent with this opinion.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Theofanis

Reversed and Remanded

Filed:  April 21, 2023

12